## HART v. THE C., R. I. & P. R. Co.

### SAME v. SAME.

1. **Railroads**: NEGLIGENCE: SIGNALS AT CROSSINGS. In actions to recover for injuries received by the plaintiffs, by reason of the frightening of the team they were driving, caused by the sudden opening of the escape valves of an engine attached to one of detendant's trains, standing at a public crossing, it was held that the fact that the defendant did not provide a flagman at the crossing, or give other signals to warn the plaintiffs of the movements of the engine, should be considered in determining the question of the defendant's negligence, such signals being required not alone to prevent collisions, but to enable travelers upon the highway to guard against other accidents as well.

2. ——: ——: ——. The defendant, in the use of its road, was bound to exercise reasonable care and diligence to prevent injury to the persons and property of those lawfully using the highway, and whether it did so or not was a question for the jury, under all the evidence.

### *Appeal from Polk Circuit Court.*

### WEDNESDAY, JUNE 8.

THE plaintiff Louisa A. Hart claims of the defendant ten thousand dollars, on account of injuries alleged to have been sustained through the defendant's negligence. The plaintiff John P. Hart claims fifteen thousand dollars, on account of injuries alleged to have been sustained in like manner.

By agreement of counsel, the causes were tried together. The petitions of plaintiffs allege in substance that they sustained the injuries of which they complain whilst attempting to cross the line of the defendant's road on Fifth Street in West Des Moines; that the defendant did not have any flagman or watchman at said crossing, or do any act or take any precaution to warn travelers not to cross, or give them warning of danger; that the defendant's train and engine stood upon its track east of Fifth Street, and within fifteen or twenty feet of the beaten line of Fifth Street, where it crosses the railroad track; that the plaintiffs drove along Fifth Street and

were just crossing the defendant's track within fifteen or twenty feet of the head of the defendant's engine, when the defendant negligently, and without any notice of its intention to do so, caused the drip-cocks and valves on said engine to be opened and the steam and water to escape therefrom with a loud noise, and negligently permitted the bell on said engine to be rung, whereby the horses became frightened and unmanageable and overturned the buggy, throwing the plaintiffs to the ground and severely injuring them. The causes were tried to a jury, and a verdict in each case was returned for the defendant. The plaintiffs appeal. The material facts are stated in the opinion.

*Smith & Baylies*, for appellants.

*Wright, Gatch & Wright*, for appellee.

Day, J.—The evidence tends to establish the following facts: The plaintiffs, John P. Hart and Louisa A., his wife, left their home in Warren county, on the morning of January 29th, 1878, arrived in Des Moines before noon of the same day, and stopped with friends at the north-west corner of Fourth and Elm streets. They were traveling in a two-seated, open buggy, drawn by a pair of gentle horses. The place where they stopped is two blocks south of Vine Street, on which are the principal tracks of the C. R. I. & P. Railroad. Between three and four o'clock in the afternoon of the same day they resumed their journey, to visit relatives some miles north of Des Moines. They drove up Fourth Street, crossed the Valley railroad on Market Street, and when nearing Vine Street found the Fourth Street crossing blocked by a train of cars standing across it. They then turned west through the alley in the middle of the block to Fifth Street, striking Fifth Street about one hundred and forty feet south of Vine Street. When they came upon Fifth Street they saw defendant's engine standing upon one of the five tracks on Vine Street, facing west and with its front about at the sidewalk on the east.

side of Fifth Street, where it had been standing for about twenty minutes. Plaintiffs had been informed that the train on the Winterset and Indianola branch of said road was in the habit of lying there for some time preceding its departure, and that when about ready to go out it was backed down east to the depot between Third and Fourth Streets. The engine was apparently attached to a train lying in its rear. There was no flagman at the station, nor were any other means provided to give warning of danger. The plaintiffs looked and listened for a sign or signal of motion or danger, and neither seeing nor hearing any, they proceeded to drive across the street. Just as their team had arrived at the street crossing, and as it was about to step upon the first railroad track on Vine Street, the steam was let off the engine, the bell was rung and the engine began to back. The noise frightened the horses and they immediately backed, cramped, turned and upset the buggy, by which plaintiffs were thrown upon the ground and both seriously injured.

When an engine has been standing for some time, water forms in the cylinder from the condensation of steam, and it is usual, and considered necessary for the safety of the engine, for the engineer to open the cocks under the cylinder and expel the water before starting the engine.

I. The court instructed the jury as follows:

"10. It is alleged in plaintiffs' petition that defendant failed and neglected to provide a flagman at this crossing. There is no statute in this State requiring railroad companies to have flagmen at street crossings, and at common law it is only required that defendant shall have flagmen at crossings very much used, to warn persons about to cross the track of the approach of engines and cars thereto, and to prevent collision, by persons on the highway, with such moving engines and cars, and failure to have a flagman at the crossing is immaterial in this case, and not to be considered by you, unless you believe from the evidence that such engine was approaching, or about to approach, toward said crossing."

"13. If, in the testimony, you find no evidence as to what would be the duty of a flagman, then you cannot presume what such duties would be, and in the absence of testimony as to his duties, the want of a flagman would be taken out of your consideration, and would not be proper for you to take into account in making your conclusion as to defendant's negligence."

1. These instructions are inconsistent, and for that reason erroneous. The tenth instruction directs the jury as a matter of law that the duty of a flagman is to warn persons about to cross the track of the approach of engines, and to prevent collisions by persons in the highway with such moving engines and cars. The thirteenth instruction, in effect directs the jury that the duty of a flagman is a matter of fact, to be determined from the testimony, and that in the absence of testimony on the subject they cannot determine what the duty of a flagman is. The conflict between the instructions is apparent.

2. These instructions are not only conflicting, but they are both positively erroneous, to the prejudice of the appellants.

1. RAILROADS: negligence: signals at crossings. The case of *Norton v. Eastern Railroad Company*, 113 Mass., 366, is directly in point. In that case the plaintiff offered to prove that he was riding in a wagon drawn by a horse on a highway crossed by the defendant's track at grade; that when he had approached within thirty-six feet of the track a train of cars passed over the crossing and frightened the horse, causing him to kick and break the plaintiff's leg; that there was no flagman near the crossing, and no flag was shown, bell rung or whistle sounded to indicate the approach of the train, though there was a flag station there, and a flagman was accustomed to display a flag there to warn travelers of the approach of the train. The court rejected this and other evidence offered by the plaintiff, and ruled that the facts if proved would not support the action. The statute required the ringing of a bell and the sounding of a whistle, but did not require the employment of

a flagman.    The defendants insisted that even if they neglect-
ed the statutory signals of ringing the bell and sounding the
whistle they would not be liable, because such signals are in-
tended to protect travelers at highway crossings from actual
collision only, or at most from taking a position involving im-
minent danger of collision.

The court, after holding that the signals provided by stat-
ute cannot be limited as claimed, proceeded to consider the
evidence offered of the absence of a flagman as follows: "Evi-
dence was offered by the plaintiff tending to show that the de-
fendants had failed to take precautions, other than those ex-
pressly required by statute, in announcing their approach to
the crossing (such as were proper and such as they had ac-
customed travelers on its highway to expect), which was ex-
cluded by the court, the plaintiff not having been exposed by
neglect of them to collision or any danger thereof.    That
mere compliance with statutory requirements will not absolve
the railroad corporations from any duties they were under be-
fore, or excuse them from taking other reasonable precaution-
ary measures when their trains are crossing or about to cross
a highway, is well settled.    In case of collision, it is for the
jury to say whether such measures have been adopted, and
whether under the circumstances of the case the railroad cor-
poration has used reasonable care to prevent it.    *Bradley v.
Boston & Maine Railroad*, 2 Cush., 539; *Linfield v. Old
Colony Railroad Company*, 10 Cush., 562.    The reasons
upon which we have held that the statutory requirements are
not intended for the purpose of guarding against collision
only, at crossings of the highway made at grade, compel us
also to hold that the obligation to take such other reasonable
precautions, at such points, as are required for the safety of the
traveler upon the highway, is one which is due to him, not
only for this purpose, but also for that of protecting him, or
of enabling him in the exercise of reasonable care to protect
himself, in approaching the crossing, from the danger of alarm
to the animals he is driving.    The evidence upon this sub-

ject, which was excluded by the learned judge who presided, should therefore have been admitted."

The evidence here referred to, and which was rejected, was evidence that there was no flagman at the crossing to give warning of an approaching train. No proof was offered of the duties of a flagman. The court held, as a matter of law, that it is the duty of a flagman, not only to warn against collisions, but also to give such warning as will enable a traveler approaching a crossing, in the exercise of reasonable care, to protect himself from the danger of alarm to the animals he is driving. This case, we think, announces the correct rule. It follows that both of the instructions we are considering are erroneous.

II. The court further instructed the jury as follows:

" If you believe from the evidence that the noises made upon defendant's engine, of which the plaintiffs complain, were such as are usually made in putting in motion an engine, and that they were necessary to the prudent movement thereof, both with respect to persons who might be in the way of such moving train and to the safety of the engine and its parts, then defendant was under no obligation to notify plaintiffs of such intended movement or noise, either by flagmen or otherwise, and failure to do so would not render defendant liable in this action." The giving of this instruction is assigned as error. The defendant had a right to move its trains upon its track. The plaintiff had an equal right to cross the defendant's track at the street crossing. Both of these rights cannot be exercised in an absolute and unrestricted manner. The right of each party is qualified and abridged to some extent by the right of the other. The right of each party must be exercised with a view to the right of the other, and in such manner as not unreasonably to interfere with it. Now to say as matter of law that the defendant was under no obligation, by flagmen or otherwise, to notify the plaintiff of an intended movement and noise in the exercise of its right, amounts to no less than saying as

matter of law that the rights of defendant are paramount, and, may be exercised without regard to the rights of the plaintiffs. Whether the defendants were under obligations to notify the plaintiffs of an intended noise and movement cannot be determined as a matter of law, but is a question of fact, to be determined from all the surrounding circumstances. If the noise and movement were likely to be attended with danger to the plaintiffs, then it was the duty of the defendant to exercise reasonable and ordinary care to prevent injury. And, if the exercise of such reasonable and ordinary care under the circumstances would require notice in some manner to the plaintiffs, then it was the duty of the defendant, as a matter of law, to give such notice. The true doctrine upon this subject is stated in *Pennsylvania Railroad Company v. Barnett*, 59 Penn. St., 259. In that case the plaintiff was driving over a bridge which crossed the defendant's railroad nineteen feet above the track. Whilst the plaintiff was upon the bridge, the defendant's express passenger train from Philadelphia going west passed under it, whistling as it passed, at which plaintiff's horses took fright and ran away, overturning the carriage, throwing him out, injuring him seriously and permanently. In affirming the judgment for the plaintiff, the court say: " It is as clearly the duty of a railroad company, as it is of a natural person, to exercise its rights with a considerate and prudent regard for the rights and safety of others, and for injuries occasioned by negligence both are equally responsible. Nor is it any excuse or justification that the act occasioning the injury was in itself lawful, or that it was done in the exercise of a lawful right, if the injury arose from the negligent manner in which it was done. If there was no danger to the persons and property of those who might be traveling along the public road in running its trains without giving any notice of their approach to the bridge, then the company is not chargeable with negligence in not giving it. But if danger might be reasonably apprehended, it was the duty of the company to give some notice or warning, in order that it might

be avoided. 'If it would have been negligence in the plaintiff to drive upon the bridge just as the train was about to pass under it, had he been aware of its approach, then he was entitled to notice, and it was the duty of the company to give it. Whether, therefore, the company exercised proper care and diligence in running the train in order to prevent injury to the persons and property of those who were lawfully on the public road, and in the vicinity of the crossing, was a question for the jury." See also *Hill v. Portland & Rochester R. R. Co.*, 55 Me., 438; *Norton v. Eastern Railroad*, 113 Mass., 366; *Toledo, Wabash & Western Railway Co. v. Harman*, 47 Illinois, 298; The *Manchester Railway Co. v. Fullarton*, 14 C. B., N. S., 53.

The appellee cites and relies upon *Farn v. Boston & Lowell Railway Co.*, 114 Mass., 350. In that case the plaintiff was passing along a highway under a railroad bridge. The decision was based expressly upon the ground that, as the railroad crossed the highway by a bridge, it had no rights in the highway, and consequently the same duties are not imposed upon it that are imposed when it passes over the highway itself in common with the traveler. That a different conclusion would have been reached if the railroad had crossed the highway at grade, as in this case, is evident from *Norton v. Eastern Railroad Co., supra*. The court erred in giving this instruction. The foregoing discussion sufficiently indicates our view of the rights of the parties, without a further consideration of the errors assigned.

REVERSED.

ON REHEARING.

DAY, J.—A petition for a rehearing was filed in the foregoing case, in which the opinion is assailed with much earnestness and vigor. Some of the positions taken in the petition for a rehearing seem to merit and require notice in a supplemental opinion.

I.   It is said that the doctrine of the 10th instruction con-

sidered in the foregoing opinion is "this and no more: that it was not our duty to have a flagman to give warning of other than trains approaching or about to approach a crossing; and that the duty to have one then, even, resulted from the common law, and not from any statutory obligation." It is claimed that this is the law, and that no one does, or can, deny it. It is very evident, however, from the branch of the opinion devoted to this instruction, that this is not the question with which it deals. The instruction goes further than as set out above, and directs that at common law it is "only required that defendant shall have flagmen at crossings * * * * to warn persons about to cross the track of the approach of engines and cars thereto, *and to prevent collision by persons on the highway with such moving engines and cars.*" It is the portion of this instruction which limits the duties of flagmen to the preventing of collisions by persons on the highway with moving engines and cars that we considered and condemned in the foregoing opinion. Hence we cited a case in which the injured person approached no nearer than thirty-six feet to the defendant's track, when he was injured, not by collision, but by the kick of his horse, frightened by a moving train, and in which it was held that the duty of a flagman extends to the giving of warning which would have enabled him to protect himself from such injury.

II. It is claimed that in none of the cases cited in the opinion were the engines and trains receding from the crossing, and that they are, therefore, all inapplicable. It is further claimed that no case can be found where a recovery has been had for any injury sustained whilst the engine and train were receding. The point determined in the cases cited, and in the foregoing opinion, is that it may be negligence for the company to make noises, calculated to frighten the animals of travelers, without giving any warning or notice thereof, and that for any injury resulting the company may be held liable, even when no actual collision occurs.

It is held that it must be submitted to the jury to determine, as a question of fact, whether, under the circumstances, the making of certain noises, without notice or warning, constitutes negligence. The particular act complained of in this case was the opening of the drip cocks and valves on the engine, and allowing the steam and water to escape with a loud noise. Now if this act may constitute negligence in a train approaching a crossing, there is no principle of law upon which it can be held that it may not constitute negligence in a train receding from the crossing, or standing still. Of course, as a matter of fact, the company may be liable for the making of noises under some circumstances, and not liable for the making of them under other circumstances. But, as matter of law, liability for noises made without notice cannot be limited to cases in which the trains are approaching a crossing. We have examined the entire petition for rehearing with much care, and we see no reason for receding from any of the views expressed in the foregoing opinion. The petition for rehearing is

OVERRULED.