HARRY E. PALMER AND WIFE *vs.* THE CHICAGO, BUR-LINGTON AND QUINCY RAILROAD COMPANY AND THE PENNSYLVANIA COMPANY.

Hartford Dist., Jan. T., 1888. PARK, C. J., CARPENTER, PARDEE, LOOMIS and BEARDSLEY, Js.

The C. B. & Q. Railroad Company received of the plaintiffs goods to be transported to a point beyond its eastern terminus, the plaintiffs giving a guarantee for payment of the freight through. The railroad connected at that terminus with the road of the P. Company, and the two companies had an agreement to forward all goods brought by either where there was a guaranty of freight charges entered on the bill of lading. The C. B. & Q. Company transported the goods to the point of junction and placed the car upon a side track used for such purpose by both companies, and the P. Company took the car to its freight depot, unloaded it and placed the goods in its freight house. The bill of lading was sent to the latter company by the C. B. & Q. Company, but by mistake no memorandum of the guaranty of the freight was entered upon it, and the P. Company declined to forward the goods, and sent notice to the C. B. & Q. Company that they would not be forwarded until the freight was paid or guaranteed. The memorandum of the guaranty was sent by the C. B. & Q. Company, but not until several days later; and on the morning of the day it was received the freight depot was burned, and the goods either destroyed or much dam-

aged. Held that the C. B. & Q. Company was liable to the plaintiffs for the loss on the goods, and that the P. Company was not liable.

[Argued January 10th—decided March 20th, 1888.]

ACTION for a breach of contract to transport goods as common carriers; brought to the Superior Court in Litchfield County, and tried to the court before *Sanford, J.* Facts found, and judgment rendered against the Chicago, Burlington & Quincy Railroad Company, one of the defendants, and in favor of the Pennsylvania Company, the other defendant. The former company and the plaintiffs severally appealed. The case is fully stated in the opinion.

*H. B Graves*, for the Chicago, Burlington & Quincy Railroad Company, appellant.

*G. A. Hickox* and *J. T. Hubbard*, for the plaintiffs, appellants.

*A. T. Rorabach* and *S. A. Herman*, for the Pennsylvania Company, appellee.

PARDEE. J. This is a complaint for breach of a contract to transport goods as common carriers, asking for judgment against one or the other of the two defendant corporations, the Chicago, Burlington & Quincy Railroad Company and the Pennsylvania Company. The court rendered judgment against the former and in favor of the latter, and the former, with the plaintiffs, appealed to this court. The following finding of facts was made by the court below:

The Chicago, Burlington & Quincy Railroad Company's road extends from Council Bluffs, Iowa, to Chicago, Illinois —Chicago being its eastern terminus, at which place its road connects with the railroad of the other defendant. The Pennsylvania Company's road extends from Chicago to Pittsburgh, Pennsylvania, that being its eastern terminus.

On the 20th day of May, 1885, the plaintiffs, at Council Bluffs, delivered to the Chicago, Burlington & Quincy Railroad Company the goods mentioned in the complaint, to be

transported to Litchfield, Connecticut, and received from the company the following bill of lading:

"Council Bluffs, May 20, 1885.

"Received from P. T. Mayne, in apparent good order, by the Chicago, Burlington & Quincy Railroad Company, to be transported to Litchfield, Conn., the following articles, as marked and described below, subject to the general rules of the said company, and the conditions and regulations of their published freight tariff applying on shipment of freight from this station to the destination named, it being expressly agreed and understood that the said Chicago, Burlington & Quincy Railroad Company, in receiving the said packages to be forwarded as aforesaid, assume no other responsibility for their safety than may be incurred on their own road.

"*Marks and Consignee.*
MRS. H. E. PALMER,
Litchfield, Conn.

*Description of articles as given by Consignor.*
H. H. Goods.

"[Schedule of articles] Wt. 4,700 pounds.

"Guaranteed.

O. R. & REL.
CHAS. KEITH, D."

At the time of the delivery the plaintiffs executed a guaranty for the payment of all freight charges upon the goods to the place of destination, "at a rate clear through," to the acceptance of the shipping agent of the railroad company.

The Chicago, Burlington & Quincy Railroad Company transported the goods upon its own road, safely and without damage, to Chicago, arriving there the 23d day of May, 1885, and on that day, being Saturday, placed the car containing the goods upon a piece of railroad track, occupied in common by both the defendants, and called a "Y." At about half past ten in the forenoon the car containing the goods was taken by the Pennsylvania Company and switched on to its tracks and taken to its freight depot, where the goods were unloaded by the workmen of the Pennsylvania Company and placed in its freight depot, May 25th, 1885. At the time the goods were so taken by the Pennsylvania Company the bill of lading accompanying the same was also

delivered to that company, but by mistake on the part of some of the officers of the C., B. & Q. R. R. Co., the bill of lading was not marked "freight charges guaranteed," as it should have been. The goods remained in the depot of the Pennsylvania Company till the 26th day of May, 1885, when the proper officers of that company notified the C., B. & Q. R. R. Co. that they declined to forward the goods because the freight charges were not guaranteed, and returned the expense bill to the C., B. & Q. R. R. Co., refusing to receive the goods for transportation till the freight charges were paid or until a notation of "freight charges guaranteed" was entered thereon; and in the afternoon of June 1st, 1885, the expense bill was received from the C., B. & Q. R. R. Co. by the Pennsylvania Company with these words added, "freight charges guaranteed;" but it was not so received till after the fire hereinafter described and after the injury complained of was done to the goods.

On the first day of June, 1885, a fire broke out in the depot of the Pennsylvania Company, and a part of the goods were destroyed and a part injured and damaged by the fire and by water used to put out the fire, the amount of the damage being $698.

I find that the C. B. & Q. R. R. Company is liable therefor, and judgment is rendered accordingly against that company and for the plaintiffs to recover of it that sum and their costs, and for the other defendant, the Pennsylvania Company, to recover of the plaintiffs its costs. In coming to this conclusion I find that by virtue of the contract guaranteeing freight charges from Council Bluffs, the C. B. & Q. R. R. Co. undertook and agreed to transport the goods from the place of shipment to Litchfield, Connecticut, and that the delaying the same at Chicago was owing to its not having furnished the Pennsylvania Company its freight charges, or notifying that company that freight charges were guaranteed, as it was in duty bound to do. I further find that it was the custom between those companies that each should receive as common carriers and transport towards their destination all goods left on the piece of common

track called a "Y," by the other company, on being prepaid the freight thereon, or on receipt of an expense bill with the words " freight charges guaranteed," or words equivalent thereto, indorsed by the delivering company thereon; but it was their custom not to receive or forward such goods unless freight was prepaid or freight charges guaranteed.

The C., B. & Q. R. R. Co. claimed upon the facts and the contract of shipment that it only contracted to carry the goods from Council Bluffs to Chicago, and that it had fully performed its contract by placing the same in the possession of the Pennsylvania Company in good condition. It also claimed that under the contract of shipment it could not be held liable for the loss and damage to the plaintiffs' goods, as such loss and damage did not happen on its road, as by the conditions and terms of the contract. It also claimed that it did not make a contract to transport the goods to Litchfield, Connecticut, and that it could not legally make a contract to carry the same beyond its eastern terminus. It also claimed that the Pennsylvania Company was liable for the damage to the plaintiffs as the loss happened when the goods were in its possession, and that the Pennsylvania Company was negligent in not giving notice to it that the bill of lading was not satisfactory until the 26th day of May, 1885, having had the goods and bill of shipment in its possession more than three days prior thereto. But the court overruled all these claims. The plaintiffs claimed that both defendants had been guilty of negligence and were liable in this action; that the bill of lading, by the law of Iowa, where the goods were shipped, made it the duty of the C. B. & Q. R. R. Co. to transport the goods to Litchfield, their place of destination; that whether or not such construction should be given to the bill of lading by the court, it was the duty of the company, after transporting the goods to Chicago, to so place the same in the possession of the Pennsylvania Company, as that it would thereby be rendered responsible as a common carrier for the care of the property and would be obliged to forward it without unreasonable delay towards its destination; that whether the C., B. & Q.

R. R. Co. had made such delivery of the goods to the Pennsylvania Company, was a question of law and fact for the court to decide, and if it had made such delivery, then, on such construction of the bill of lading, it would not be liable, but in that case the Pennsylvania Company would be liable to the plaintiffs.

The court having rendered judgment against the Chicago, Burlington & Quincy Railroad Company, that company appealed, assigning the following reasons:—

1. That this defendant fulfilled and performed its contract by the safe delivery of the goods in Chicago, the eastern terminus of its road.

2. That under the finding of facts this defendant was not in law liable for the damage that happened to the goods three days after their delivery to the Pennsylvania Company at Chicago, and while in the depot of that company.

3. That by the finding it appears that this defendant delivered the goods to the Pennsylvania Company on the 23d day of May, 1885, and that that company took possession of the same and placed them in their depot for shipment, and did not give notice to this defendant of any reason why the goods had not been forwarded on their destination till the 26th day of May, 1885; and that this negligence on the part of that company absolved this defendant from any duty arising under its contract, express or implied, for the care and responsibility of the goods.

4. That under the facts as found the Pennsylvania Company and not this defendant was liable for the damage to the goods.

5. That the court erred in deciding that under the contract of shipment this defendant agreed to transport the goods from Council Bluffs, Iowa, to Litchfield, Connecticut.

6. That this defendant never made any such contract to transport the goods to Litchfield, Connecticut, and could not, in law, make any such contract.

The plaintiffs appealed, assigning the following reasons:—

1. Because on the pleadings and on the facts found the plaintiffs were entitled to judgment against both defend-

ants, and the court erred in rendering judgment in favor of the Pennsylvania Company.

2. Because the finding of facts shows that the Pennsylvania Company was guilty of such negligence as entitled the plaintiffs to judgment against it, and the court erred in rendering judgment in its favor.

We are not required to determine the question whether or not the Chicago, Burlington & Quincy Railroad Company came under an obligation to the plaintiffs to transport and be responsible for the goods over the entire distance. It received them into its custody for transportation, marked to a place beyond its terminus. It required of the plaintiffs, as a prerequisite, satisfactory security for the payment of the freight to that place; practically, required advance payment for the freight to be earned by itself and advance deposit of money with it for that to be earned by the several carriers over the entire distance. As a matter of law therefore it agreed with the plaintiffs not only to discharge its duty as a common carrier in reference to the goods over its own railroad, but also to so deliver them at Chicago into the possession of the common carrier there connecting with it, the Pennsylvania Company, as that the latter would be under the same obligation as a common carrier in reference to them which would have been upon it if the goods had been received by it from the consignor with advance payment of freight. *Bancroft* v. *Merchants' Dispatch Co.*, 47 Iowa, 262; *Hewett* v. *C. B. & Q. R. R. Co.*, 63 id., 611; *Railroad Co.* v. *Manufacturing Co.*, 16 Wall., 318, 324. A valuable consideration for this agreement is found in the benefit derived from being allowed to carry the goods over its own line. And the power to make such agreement is so necessary to the profitable as well as beneficial use of its franchise, that it is to be considered as having been granted in its charter, as being a necessary incident thereto. Each company had agreed that it would not consider any goods as having been delivered to the other for transportation unless there had been either payment or this indorsement on the way-bill of "freight charges guaranteed." Before the delivery of this

the Chicago, Burlington & Quincy Railroad Company did not relieve itself from the assumed obligation as a carrier, nor did the Pennsylvania Company come under any. It is of no legal significance that the former placed the car containing the goods upon a piece of track used in common by both; none that it notified the latter that the goods were in that car, on that track; none that it was in the power of the latter to have taken the goods from that place. There was wanting the certificate of "freight charges guaranteed;" there was wanting a link necessary to the continuity of the chain of legal obligation by which it is sought to bind the latter as a carrier. The Chicago, Burlington & Quincy Railroad Company placed the car containing the goods upon the piece of common track on Saturday May 23d; in the forenoon of Monday, the 25th, the Pennsylvania Company put the goods into its depot, receiving at the same time a bill of lading upon which there was no certificate of guaranty of freight. On the 26th it notified the Chicago, Burlington & Quincy Railroad Company that it would not receive the goods for transportation unless there should be payment for freight or guaranty given. And it is found that this refusal was in compliance with the rule which it was the custom of each company to enforce against the other, respecting the transportation of freight brought by each to the other. The guaranty was given in the afternoon of June 1st. But on the forenoon of that day a fire had broken out in the Pennsylvania Company depot and consumed a portion of the goods, and the remainder was damaged by water. The obligation was upon the Chicago, Burlington & Quincy Railroad Company, as it would have been upon the consignor for whom it had agreed to act in the matter, of so delivering the goods to the Pennsylvania Company that the latter would become bound to transport them as a paid carrier, to prepay or give the acceptable guaranty; not at all upon the Pennsylvania Company to take the initiative by giving notice or making a demand. Moreover the latter company did notify the Chicago, Burlington & Quincy Railroad Company on the 26th of the

absence of the certificate, and it was not until June 1st that the mistake was corrected. This fact unexplained will of itself support the finding of the court that the delay in transportation is chargeable to the Chicago, Burlington & Quincy Company.

In placing the car containing the goods upon the piece of common track it was not the intent of the Chicago, Burlington & Quincy Company to put them into the possession of the Pennsylvania Company as a warehouseman. The absence of the guaranty from the bill of lading was an accident on its part; therefore it did not as a fact draw from the act of the Pennsylvania Company in taking the car into its depot and there unloading the goods for forwarding purposes, an inference that this had been done with intent either to warehouse or forward them without payment or guaranty; and the law will not draw such inference in its behalf. As a result from their agreement as to the terms upon and manner in which each might deliver and receive goods to and from the other for transportation, it was the privilege of each to remove them from the common track to its depot by way of preparation for forwarding, without coming under any obligation to the other to transport without payment or guaranty or to become a warehouseman. Each company had agreed that it would not consider any goods as having been delivered to the other for transportation unless there had been prepayment or guaranty.

There is no error in the judgment complained of.

In this opinion the other judges concurred.