C. M. OCHILTREE, Appellant, v. THE CHICAGO & NORTH-WESTERN RAILWAY COMPANY.

**Railroads:** NEGLIGENT WHISTLING. It is proper to charge, that whistling "off brakes" in the proper operation of a train, when it is known that a team is about two hundred feet away on an adjacent highway, is not negligence, unless the engineer should have known from the conduct of the team at the time, and its proximity, that the whistle would probably frighten it and lead to the injury of the people in the buggy.

SAME: Such whistling is not negligence as a matter of law.

*Appeal from Audubon District Court.*—HON. A. B. THORNELL, Judge.

WEDNESDAY, JANUARY 30, 1895.

Action for damages by a husband for loss of services of his wife by reason of a personal injury. Verdict and judgment for defendant. Plaintiff appeals. —*Affirmed*.

*H. U. Funk* and *Nash, Phelps & Green* for appellant.

*Hubbard & Dawley* for appellee.

Kinne, J.—I.    Plaintiff is the husband of Nettie Ochiltree. It appears that on the morning of August 27, 1889, plaintiff's wife started to drive to the town of Audubon, and had with her another lady and two small children. She drove a span of horses which were hitched to an open, two-seated buggy. The following

diagram will show the course of the highway, the rail-
road, and their situation with reference to each other.

One of the horses was seventeen years old, and the
other was twenty-one years old.   In leaving her home,
and going to the town, Mrs. Ochiltree would travel east
to a point nearly opposite the whistling post, and then
turn south, crossing the railroad track at a point oppo-
site the gate indicated upon the plat, and continue
south into Audubon.   After she had turned south and
gone a short distance, and was probably south of the
bridge, her companion discovered that a train was com-
ing from the north on defendant's track.   It was then
near the whistling post.   Mrs. Ochiltree whipped up
her horses with a view of reaching the gate in advance
of the train, and turning into the field west of the
track.   She did go south, and turned into the field
through the gate, went west a short distance, and
turned north, when the horses became unmanageable,
and she and the other occupants of the vehicle were
thrown out, and she was severely and permanently

injured. This action is brought by the husband to recover for loss of services of his wife, and for expenses incurred in and about nursing and caring for her during her sickness. The negligence charged is: "That, when the train, in passing, had arrived at a point opposite the place where the said team was quietly standing, one of the trainmen, in charge of the engine, carelessly and negligently blew the whistle on the engine three or four sharp blasts, thereby wantonly causing the said team to take alarm and become unmanageable, by jumping, and jerking the buggy, and thereby throwing the said plaintiff's wife violently to the ground, and fracturing her left leg near the ankle." The petition also charges that, prior to the time of the accident, the team was under the full control of the driver, and gave no evidence of fright from the passing train. The evidence shows, without conflict, that Mrs. Ochiltree saw the train, as before stated; that she whipped up her horses, and continued to go south on the highway, adjacent to the railway track, until she reached the gate, when she turned into the field, went west a short distance, and then turned north, when her horses became unmanageable, and the occupants of the buggy were thrown out; that the horses were gentle, and, up to the time of the accident, under her control; that, immediately prior to the accident, the engine gave several short, sharp whistles, as testified to by plaintiff's witnesses, and only two short whistles, as testified by defendant's witnesses, and at once the team became frightened and ran away. The testimony on part of defendant showed that the engineer saw Mrs. Ochiltree as he was rounding the curve, going south; that her team was going at a good gait; that he sounded four blasts of the whistle at the whistling post, whereupon she whipped up her team, apparently for the purpose of making the

crossing in advance of the train; that the engineer thought that such was her intention, and he whistled once for brakes to be set; that they were set, and that there was no indication that the team was frightened; after he saw her turn into the field, and when he thought her out of the way, he whistled twice as a signal for the trainmen to release the brakes; before the brakes were applied, the train had been running at a speed of about thirty to thirty-five miles an hour, and on a slightly down grade, and that, when he called for brakes, he did not know that the gate was open, and that he whistled "Off brakes" before the team had turned north; that there was no other signal to release brakes except that given, and, if it had not been given, the train would have come to a full stop. The jury found for the defendant.

II.  The appellant contends that the court erred in its charge to the jury, and especially in the seventh division thereof.  To the end that the trial court's views of the law as given to the jury may be fully understood, it becomes necessary to refer to, and set out at some length, portions of the charge relating to the matter complained of, and which must be considered in determining the correctness of the law as given by the trial court to the jury.  In the third instruction the court told the jury that, before plaintiff could recover, "it must appear from the evidence that the employes of the defendant operating the defendant's engine did blow the whistle on said engine substantially as claimed by plaintiff, and that their act in so doing was, under all the circumstances attending it, negligent; but the mere fact of the happening of the accident is not evidence of negligence on the part of the defendant."  In the fourth instruction the jury were told that "the defendant had the right to run its trains upon its track, and the plaintiff's wife had an

equal right to travel along the highway.  *  *  *
But neither of these rights can be exercised in
an absolute and unrestricted manner. The defend-
ant, in running its trains along and near the
highway, was bound to operate its engine with
reasonable regard to the safety of persons whom
its employes in charge of the engine knew at the
time were passing along the highway; and if they
failed to do this in the particulars complained of in
the petition, to-wit, the blowing of the whistle, and it
is further shown that such want of ordinary care
caused the injury to plaintiff's wife, without negligence
on her part that contributed to the injury, plaintiff
would be entitled to recover for any damages resulting
to him from such negligent acts." In the seventh
instruction the court told the jury, in substance, that
the defendant had the right to give signals in operating
its trains by blowing the whistle on its engine, and
that it would not necessarily follow that it would be
liable for an accident caused thereby; that "whether
such accident would impose liability on the defendant
company to respond in damages must depend upon the
fact whether the blowing of the whistle and the conse-
quent accident was the result of want of reasonable
care on the part of the persons in charge of said engine.
The wanton or unnecessary blowing of the whistle
would be negligence.  *  *  *  If the evidence shows
that the whistle on defendant's engine was only blown
at the time in question for the purpose of giving sig-
nals in the operation of the train, you must then con-
sider whether, in so doing, the engineer in charge of
the engine failed to exercise reasonable care and pre-
caution." The court then proceeds to tell the jury
that if the engineer, as a reasonably prudent man, at
the time the engine approached the crossing, had rea-
son to believe that plaintiff's wife was attempting to

drive across the crossing ahead of the train, and that such attempt was likely to lead to a collision, it was his duty to take such measures and give such signals as were best adapted to check or stop the speed of the train, and a blowing of the whistle as a signal to apply brakes, under such circumstances, would not be negligence.   The instruction then proceeds as follows: "And if such state of facts is shown by the evidence, and it further appears from the evidence that thereafter plaintiff's wife, before reaching the crossing, and before the accident, turned the team through a gate into a field, and that thereupon said engineer sounded the whistle to notify the other trainmen to release the brakes and permit the train to move forward towards its destination, his act in so doing would not be negligent, *unless it also appears from the evidence that, in the exercise of reasonable prudence and judgment, he should have known from the conduct of the team at the time, and his proximity to them, that sounding the whistle at that time would probably have the effect to frighten them, and render them unmanageable in the hands of plaintiff's wife. It was his duty and the right of the defendant company to have him proceed with the train with all reasonable diligence; and, if it is shown by the evidence that the sounding of the whistle before the accident was for the purpose of signaling the other men in charge of the train to release the brakes, then, for such act to constitute negligence, it must appear that the engineer had reasonable ground to anticipate that the sounding of the whistle at that time might injure the people in the buggy.* But if it is shown by the evidence that after the team was turned into the defile, the defendant's engineer did sound the whistle as a signal to release the brakes, and that, in the exercise of reasonable judgment and care, he *should have known* that

to do so would *probably* have the effect to frighten said team, and that it did frighten them, and thereby plaintiff's wife was injured, then his act in so doing was negligent. Whether the engineer in charge of defendant's engine blew the whistle, and, if so, the purpose for which it was blown, and whether his act in so doing was negligent, are questions of fact, to be decided by you from all the testimony in the case; but, unless such negligence is shown by the evidence, the plaintiff cannot recover."

The argument in this case seems to be based upon the theory that there were two blasts of the whistle blown near the crossing; and appellant contends that, conceding that they were blown as a signal to the trainmen to release brakes, defendant had no right so to do under the circumstances. Plaintiff's contention is, as we understand it, that it was negligence, as a matter of law, to give the signals when the team was, as he admits, from one hundred and fifty to two hundred feet from the train; that defendant owed a duty to travelers on the highway to *know that they were there*, and to exercise reasonable care to prevent frightening their teams; that the fact that horses are likely to be frightened by the blowing of a whistle is a matter of common observation, and which the engineer must be presumed to know; and that he must be upon the watch for teams upon the highway, and, if they be so near the train as to be within the hearing of the sound of the whistle, then, in the exercise of ordinary care, the engineer must refrain from blowing the whistle, except in cases of danger, until the team has passed beyond the hearing of the whistle. So far as this case is concerned, it is of no moment as to what the rule may be as to the exercise of care by defendant towards teams upon the highway, as to which defendant or its trainmen may have no notice or knowledge, as the

facts of this case show without conflict that the
engineer did know that plaintiff's wife was driving the
team upon the highway, and saw her turn into
the field.    We cannot accede to the doctrine
that it is negligence, as a matter of law, for an
engineer of a train to whistle "Off brakes" when he
knows that a team is from one hundred and fifty to
two hundred feet from him on a public highway.    That
it might be negligence so to do under certain circum-
stances may be conceded, but it would not be so in the
absence of any fact which might tend to show that
there would be danger of frightening the team by so
doing.    The theory of plaintiff that, as horses are
known to become frightened by the whistling of a loco-
motive, therefore, regardless of the fact as to whether
they seem to have been frightened by previous whistling
or not, the engineer is bound to refrain from using the
whistle, even as a necessary signal in the operation of
the train, until the team has passed beyond the hearing
of the sound of the whistle, seems to us to be neither
founded in reason nor supported by authority.    If such
be the law, railroads would practically have to cease
being operated in some places in this state.    We accede
to the doctrine that those in charge of trains are bound
to exercise care as to those about to cross the railway
track; that they owe a duty to those traveling along
the highway adjacent to the track to not operate their
trains in such a manner as to cause an injury when they
know that such persons are there, and become aware
that there may be danger to them in blowing the
whistle, unless such blowing of the whistle is neces-
sary to the safe operation of the train; but the
mere fact that one is traveling with his team
upon a highway adjacent to a railway will not
render the company liable for an injury to him caused
by his team being frightened by the blowing of the

whistle of the locomotive, when it was done in the necessary and proper operation of the train, and in the absence of facts tending to show that the engineer knew or should have known that the blowing of the whistle might frighten the team. It seems to us that any other holding would impose upon railroad companies a burden which is not only unnecessary, but also unjust and unreasonable. The proper protection of those traveling upon public highways requires no such arbitrary rule. Let us consider for a moment what the rule contended for by appellant—that the engineer must assume in all cases that a team may be frightened if within hearing of the whistle, and must desist from sounding it until the team has passed beyond a point where they can hear it—would lead to. We know that the distance a whistle can be heard depends upon many circumstances, such as the character of the whistle, the contour of the surrounding country, the presence or absence of timber, buildings, and other obstructions, the way the wind is blowing, the condition of the atmosphere, and perhaps upon the raging of a storm, and upon many other facts. So that, before blowing his whistle, the engineer must determine from all the facts, circumstances, and conditions as they then exist whether or not there is a team upon a highway within reach of the sound of the whistle. And, if it appeared to him that there might be a team thus within hearing of the sound of the whistle, he must wait until he judged them to be beyond hearing the sound before he could use the whistle even in giving necessary train signals. It seems to us a bare statement of the propostion is sufficient to show that it is not only unreasonable, but untenable. The real ground of appellant's complaint against the instructions is that they make the defendant's negligence depend upon the fact that the engineer, in the exercise

of reasonable prudence and judgment, knew or should have known from all the circumstances, or from such circumstances should reasonably have anticipated, that the blowing of the whistle might frighten the team.

We think the instructions, taken as a whole, are quite as favorable to plaintiff as he could expect, and that the doctrine announced in them has the support of the weight of authority in this country. In *Hart v. Railroad Co.*, 56 Iowa, 166, 7 N. W. Rep. 9, and 9 N. W. Rep. 116, plaintiff attempted to drive over the railway track on a highway about fifteen feet in front of an engine, and, as his horses were opposite the engine, its drip cocks and valves were opened, and the steam and water escaping therefrom made a loud noise, frightening plaintiff's horses, and causing them to run away, overturning his buggy, and injuring him. It was there held that, if the noise was *likely* to be attended with danger, then it was the defendant's duty to exercise reasonable care to prevent the injury. In *Railroad Co. v. Horst*, 110 Pa. St. 226, 1 Atl. Rep. 217, plaintiff driving a horse and buggy, and waiting in a highway to cross the railway track, was invited by one of its trainmen to drive through a gap which had been made in the train, and, when passing through, defendant's servants, by shifting the brakes or couplings, made a noise which frightened the horse, causing it to run away, injuring the plaintiff. It was held that, having invited plaintiff to pass through the gap, the defendant's servants had no right to shift the brakes so as to alarm the horse. In *Hill v. Railroad Co.*, 55 Me. 438, a case where horses were frightened by a whistle blown as a signal for starting the train, the doctrine is stated that "in every case, then, it becomes a question whether in that particular case the act was reasonable, and within the rule

of ordinary care, under all the circumstances of time, place, and all the surroundings." In *Railroad Co. v. Sullivan*, 53 Fed. 219, it appeared that the engineer had blown the whistle near a crossing over which a funeral procession was passing. A horse in the procession was thereby frightened, and ran away, injuring the party. It appeared that the engineer of the train, which was standing still near a crossing, without any need therefor, blew the whistle of his engine, and that was held to be negligence. In *Railway Co. v. Box* (Tex. Sup.) 17 S. W. Rep. 375, it was said that even a whistle blown for a station, if blown after the engineer "became apprised (if so) of the fright of plaintiff's horses, and the probable danger to his wife or property, caused by previous whistling of the engine, then it was negligence to again sound or to continue sounding the whistle." We do not think these and other cases cited by appellant are in conflict with the rule laid down by the court when we consider the facts of the several cases. In *Scheffer v. Railway Co.*, 105 U. S. 249, it is said: "But it is generally held that in order to warrant a finding that negligence or an act amounting to wanton wrong is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances." *Sikes v. Sheldon*, 58 Iowa, 744, 13 N. W. Rep. 53. In *Lamb v. Railroad Co.*, 140 Mass. 79, 2 N. E. Rep. 932, plaintiff's horse, while being driven on the highway parallel with the railroad, was frightened by smoke from a locomotive. It was held that the right to fire up the engine must depend upon the character of the place, and not whether a person happens to be near at the moment. In *Bailey v. Railroad Co.*, 56 Conn. 44, 16 Atl. Rep. 234, it was held

that, when a railroad is lawfully located near a high-way, the railroad company has a right to operate its road in the usual manner, and to give the usual and proper signals of danger, without incurring liability for injuries caused by frightening horses in the high-way. In *Hargis v. Railway Co.* (Tex. Sup.) 12 S. W. Rep. 953, the court uses this language: "It is impliedly assumed in appellant's brief that the defendant was liable, although its employes did not know, and did not have reason to believe, that the noise (whistle) would frighten the mules, and that it was the duty of the company's servants to watch for teams near the track, and to so operate the engine as not to frighten them. We do not understand that the company or its servants owe to persons in charge of vehicles near the track any such duty.  *  *  *   However, we do not say that, if the employes of a railroad company *became aware* that an unmanageable team is halted near the track, it is not their duty to desist for a reasonable time from making such noises as may be avoided consistently with their other duties." In *Railway Co. v. Stinger*, 78 Pa. St. 219, plaintiff's horse was frightened by the whistling of the locomotive. The whistle was blown on approaching a street crossing. Judgment had been rendered below for the plaintiff, and, in the opinion reversing it, it is said: "If the court below had left to the jury to find negligence from the use of the whistle the second time, if they believed it to have been so used, provided the engineer saw, or with proper care might have seen, the plaintiff's wagon, and that his horse was becoming unmanageable, there would have been no error."

That part of this instruction which refers to the duty of the engineer to proceed with his train is assailed with great vigor. As qualified by what fol-lows, we think it was correct. Running all through

the argument of appellant is the claim that to sustain the rule given by the court below is to confer upon railroads superior rights to which they are not entitled, and to improperly imperil the lives of travelers upon public highways adjacent to railway tracks. The claim has no foundation. The rule is fair to all parties. It clearly recognizes the obligation to exercise due care by the railway company towards travelers upon public highways, or those approaching crossings, when, in the exercise of judgment and prudence, the trainmen know, or from all the circumstances should know, that there might be danger to the traveler in the blowing of the whistle. Surely, such a rule is founded upon reason and a just recognition of the rights of travelers upon public highways.

III.    Complaint is made because any instruction was given touching contributory negligence. It was proper to instruct with reference thereto. We have examined all the instructions complained of, and discover no reversible error.—*Affirmed.*