THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY V. JOHN WALKENSHAW, *a Minor, etc.*

No. 14,239. (81 Pac. 463.)

SYLLABUS BY THE COURT.

RAILROADS—*Sounding of Whistles—Frightening Horses.* A railroad company is not liable for injuries occasioned to a traveler by reason of his team becoming frightened on a highway running parallel with and close to a railroad from the sounding of a whistle on a passing train, where it appears that it occurred at a place remote from a crossing, that the signal was given in the usual way, for a lawful purpose incidental to the operation of the railroad, and also that the engineer had no knowledge of the presence of the traveler and his team at or before the time the signal was given.

Error from Finney district court; WILLIAM EASTON HUTCHISON, judge. Opinion filed July 7, 1905. Reversed.

*A. A. Hurd, O. J. Wood,* and *Alfred A. Scott,* for plaintiff in error.

*G. L. Miller,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action by John Walkenshaw, a minor, to recover damages from the Atchison, Topeka & Santa Fe Railway Company for personal injuries alleged to have been caused by the negligence of the railway company. He and other members of his father's family were traveling on a highway parallel with the railroad, in two wagons drawn by teams of mules. The teams were traveling close together; the front one was driven by his father, and the rear one by a young sister. His mother was walking near the heads of the rear team on the side next to the railroad, and he was walking on the other side, just behind the front wagon. They met a freight-train of the railroad company which was then approaching the station of Charleston. The engineer gave one long blast of the whistle as a signal that the train was approaching Charleston, and the conductor responded with a signal which meant to go ahead and not stop at that station. The engineer then replied with two short blasts to indicate that he had received and understood the conductor's signal. The two short blasts were given just as the locomotive had passed opposite the rear mule team, and these blasts frightened that team so that they jumped to one side and ran away, knocking John Walkenshaw down and severely injuring him. He alleged that the blasts of the whistle were not warnings or danger-signals; were not given for any crossing or station, nor where whistles are usually sounded; and that they were not necessary to the proper operation of the train, and were given without due regard to the rights of himself and other travelers upon the highway. The trial resulted in a verdict against the company for $2100, but, in answer to special interrogatories, the jury found that the engineer in charge was sitting on the opposite side of the locomotive from the teams and did

not see them when the whistle was sounded, and had not seen them before that time. It was also found that the whistle was blown in the ordinary way and as such signals are usually given; that it was done by the engineer in an attempt to perform his duty; and the only fault attributed to him was that it was not done at the proper place.

It is rightly contended that under the evidence and the findings of the jury the judgment should have been rendered in favor of the railway company. The signals were given in the usual way, and for a necessary and lawful purpose. Those in charge of the train were not aware that plaintiff or the team that injured him were in the vicinity when the signal was given, and, of course, did not know that he was endangered by it. The trainmen were required to keep a lookout along the railroad-track and at the crossings for persons, animals and things upon or approaching the railroad-track, but they were not required to look out for persons traveling on parallel highways where there were no crossings. It is well known that in the operation of trains it is necessary that whistles be frequently sounded, and other signals given. Those who established the highway knew that such signals were incident to the operation of trains, and those who used it had a right to expect signals to be given whenever the business of the road required. The highway having been located there, the railway company had a right to assume that it might operate its railroad in the ordinary manner and give the usual and necessary signals. Since the blowing of the whistles is not negligence *per se,* it devolved upon the plaintiff to show that it was unnecessarily and negligently done. As the trainmen did not see or know of the team before the whistle was blown, wilful negligence cannot be imputed to them. It is argued that it was the duty of the engineer to have known whether there was a team near by liable to be frightened be-

fore sounding the whistle. Whatever may be the rule at and near stations and public crossings, it is clear that the railroad company is not required to be on the lookout for teams on parallel highways remote from stations and crossings.

In *Bailey v. Hartford & Conn. Valley R. R. Co.*, 56 Conn. 444, 16 Atl. 234, it was held that when a railroad is lawfully located near a highway the railroad company has a right to operate its road in the usual and ordinary manner, and to give the usual and proper signals of danger, without incurring liability for injuries caused by frightened horses on the highway.

The supreme court of Massachussetts had before it the question whether trainmen must be on the watch for persons upon a contiguous highway. The plaintiff was driving a horse along the highway adjoining the defendant's railroad, and, as a train passed, the engine was fired up, which caused the emission for a short time of dense, black smoke from the smoke-stack, frightening the horse, which resulted in injury to the plaintiff. Those in charge of the train did not know that the plaintiff was on the highway, but there was evidence that they might have seen him if they had been on the lookout for travelers upon that part of the highway. However, it was held by the court that it was not the duty of those on the engine to be on the lookout for travelers on the highway who might be endangered by the firing up and the consequent emission of smoke. It was said that the act of firing up, like that of sounding the whistle or the blowing off of steam, was one necessarily incident to the running of trains, and that the lawfulness of the act did not depend upon whether there were travelers upon the highway. It was further said:

"If it is their duty to see one traveler outside of the location of the railroad, it is their duty to see how many travelers are there, and to observe the position, direction, and speed of each, the speed of the engine,

the state of the atmosphere, the direction and force of the wind, the character of the coal used, and other circumstances, which may determine whether all travelers are, and will continue to be until the smoke is dissipated, in such positions that their horses will not be affrighted by it. Being under no obligation to watch for travelers on the highway, the defendant could not have been guilty of negligence in not seeing and avoiding the plaintiff." (*Lamb v. Old Colony Railroad*, 140 Mass. 79, 2 N. E. 932, 54 Am. Rep. 449.)

In *Ochiltree v. C. & N. W. Ry. Co.*, 93 Iowa, 628, 62 N. W. 7, the plaintiff's wife was approaching a railway-crossing in a buggy on a highway that was parallel with the railroad-track for some distance before crossing it. She saw a train coming and, without crossing the track, turned into a field, through a gate opposite the crossing. The engineer saw her on the highway and had the brakes set, but when he noticed her turn into the field he whistled "off brakes" and went on. The whistle frightened her horses and she was thrown out and injured. It was contended that as horses are known to be frightened by locomotive whistles the engineer was bound to refrain from using the whistle, even as a necessary signal in the operation of his train, until the team had passed beyond the hearing of the sound of the whistle. In rejecting this view the court said:

"If such be the law, railroads would practically have to cease being operated in some places in this state. We accede to the doctrine that those in charge of trains are bound to exercise care as to those about to cross the railway-track; that they owe a duty to those traveling along the highway adjacent to the track not to operate their trains in such a manner as to cause an injury when they know that such persons are there, and become aware that there may be danger to them in blowing the whistle, unless such blowing of the whistle is necessary to the safe operation of the train; but the mere fact that one is traveling with his team upon a highway adjacent to a railway will not render the company liable for an injury to him caused

Railway Co. v. Walkenshaw.

by his team being frightened by the blowing of the whistle of a locomotive, when it was done in the necessary and proper operation of the train, and in the absence of facts tending to show that the engineer knew or should have known that the blowing of the whistle might frighten the team."

(See, also, *Norton v. Eastern Railroad Company,* 113 Mass. 366; *Flynn v. Boston & Albany Railroad,* 169 id. 305, 47 N. E. 1012; *Whitney v. Maine Central Railroad Co.,* 69 Me. 208; *P. W. & B. R. R. Co. v. Burkhardt,* 83 Md. 516, 34 Atl. 1010; *Webb v. Railway Co.,* 202 Pa. St. 511, 52 Atl. 5; *Heininger v. Great Northern Ry. Co.,* 59 Minn. 458, 61 N. W. 558; *Abbott and another v. Kalbus,* 74 Wis. 504, 43 N. W. 367; *Calhoon v. Chicago & Northwestern R. Co.,* 85 id. 570, 55 N. W. 900; *Dewey v. Chicago, Milwaukee & St. Paul R. Co.,* 99 id. 455, 75 N. W. 74; *Louisville & Nashville Railroad Company v. Smith,* 107 Ky. 178, 53 S. W. 269.)

Much is made of the fact that the whistle was sounded before a whistling-post near Charleston had been reached. The fact, if it be one, had no bearing on the duty of the railway company to the plaintiff below. The post was an admonition to the engineer to whistle at that place for the station or crossing a certain distance away. Other signals than those for stations and crossings are required and given. Where statutory signals are insufficient properly to warn travelers over crossings railroad companies are required to give others, and they have been held responsible for the consequences of failing to give such additional warnings. In this instance the whistle was not sounded as a warning to those at the station or crossing, or for any who might be approaching them. It was the usual method of communication between the engineer and conductor as to whether a stop should be made at the station. It involved the inquiry of the engineer, the answer of the conductor, and the return

notice from the engineer that the answer had been received. There is nothing in the testimony to show that this colloquy should have been deferred until the whistling-post had been passed, nor anything tending to show that the whistle was sounded unnecessarily or in conflict with any rule of the company.

Even if the whistle could as well have been sounded at some other place and time, it does not appear that it was a negligent act under the circumstances toward the plaintiff. If the engineer had known of the presence of the team, and had observed that it was frightened by the train, it might have been his duty to postpone further signals until the danger had been averted. The findings of the jury, however, relieve him from the imputation of negligence on that ground. So, too, if the injury had occurred at a crossing, or the approach to one, other considerations would have arisen. Under the findings, supplemented by the evidence, it is clear that the railway company was not culpably negligent toward the plaintiff below, and hence the judgment is reversed, with the direction to enter judgment in favor of the railway company.

All the Justices concurring.