Abbot and another vs. Kalbus.

ABBOT and another, Trustees, etc., Plaintiffs in error, vs. KALBUS, Defendant in error.

*September 25 — October 15, 1889.*

*Railroads: Negligence: Operation of locomotive near street crossing.*

Upon the evidence in this case it is *held* that it was error to refuse to instruct the jury that there was no evidence of negligence in the operation of defendant's locomotive which was engaged in switching cars near a street crossing, and that the same was not attended by unusual and unnecessary noises, when the plaintiffs' team became frightened and ran away, causing the injuries complained of.

ERROR to the Circuit Court for *Winnebago* County.

The action was brought against *Edwin H. Abbot* and *John A. Stewart,* trustees of the Wisconsin Central Railroad Company, to recover damages for personal injuries. The facts will sufficiently appear from the opinion. The jury found in favor of the plaintiff, and assessed his damages at $1,000.

For the plaintiffs in error there was a brief by *Chas. W. Felker,* attorney, and *D. S. Wegg* and *Howard Morris,* of counsel, and oral argument by *Mr. Felker.*

*Gabe Bouck,* for the defendant in error.

COLE, C. J. We are of the opinion that this cause was not fairly submitted on the questions involved, and that there should be a new trial. The action is brought to recover damages for an injury sustained by the plaintiff below through the alleged negligence of the servants of the railroad company in operating the road. The plaintiff was driving a team on Jackson street, in the city of Oshkosh, from the north towards the railroad crossing. The track of the railway crosses Jackson street nearly at a right angle. The plaintiff drove down near the crossing while the servants of the railroad were doing switching at or near the crossing. He stopped his team, and waited until the flagman at that point gave him the signal to cross the track. As he drove the team onto the track the horses became frightened at the locomotive, which was moving west near the highway, and ran away, and the plaintiff was thrown from the wagon and injured.

Of course it was essential to a recovery to show that the servants of the railway were guilty of actionable negligence in operating the locomotive at the time and place, which negligence caused the injury, and that the plaintiff himself was exercising due care in driving the team as he did. The act of negligence on the part of the company

which was alleged and attempted to be established was that its servants wantonly, recklessly, and negligently ran and operated the locomotive and cars with undue speed, making a great and unnecessary noise and commotion, and wantonly and with unnecessary violence exhausted and blew off steam, and violently rang the bell, etc., which frightened the horses and caused them to run away.

These are the facts upon which the negligence of the company is predicated. Now, after a careful examination of the evidence, we think it fails to show any negligence on the part of the company's servants in operating the locomotive, and in doing the work in which they were engaged. It is true that this and other courts have often said that whether there was negligence in a particular case was a question for the jury to determine upon all the facts shown; and there was certainly evidence given on the part of the plaintiff that the engine which was doing the switching had "a pretty big head of steam on, and was exhausting outside;" that "it had its cylinder cocks open, and made a great deal of noise in blowing off steam." But it is a matter of common knowledge that cars cannot be moved nor switching done by a locomotive without making a noise either by exhausting steam or otherwise. The question in the case, however, was, Did the servants of the company operate the engine with due and proper care, or did they run it carelessly and improperly, and blow off or exhaust steam, making unnecessary and unusual noises, which were calculated to frighten horses traveling on the highway in the vicinity?

The court was asked, on behalf of the defendants, to instruct that the company had the right to place the switch where the evidence showed it was placed, and to use its track across Jackson street in a reasonable and proper manner; that the authority to operate a railroad includes the right to make the noises incident to the movement and workings of its engines, as in the escape of steam and the

noise and rattling of cars; that it was not liable, while exercising its right in a lawful and reasonable manner, for injuries occasioned by horses, when being driven upon the highway, taking fright at such noises; that there was no evidence in the case tending to show that the operation of the engine and cars, immediately preceding the accident whereby the plaintiff was injured, was attended with any unusual noises or any unusual escape of steam, and, so far as these matters were concerned, the defendants were not guilty of failing to use ordinary care. This instruction was applicable to the testimony, and was strictly in accord with it, and should have been given. It is true the court, in its general charge, did instruct that in operating the railroad and in doing the switching at the crossing on Jackson street the defendants had the right to make the noises necessary and reasonably incident to the movement and working of their engines, as in the escape of steam and the rattling of cars; and if in this case the defendants used their engines and cars in doing the switching in the usual and ordinary manner, and made no unnecessary, unusual, or unreasonable noise, then, even if the horses the plaintiff was driving became frightened by such noise so made in doing the switching, the plaintiff could not recover. It will be seen that in this charge the court does not tell the jury that there was no evidence of negligence on the part of the defendants in the management of the locomotive when the horses took fright at it — as we really think there was not. No jury would have been warranted in finding upon the testimony that the locomotive was not operated in a prudent manner while doing the switching, or made any unusual or extraordinary noises. .

The court was further asked to instruct that if the jury believed and found from the testimony that the plaintiff drove a team of horses that he knew became easily frightened at a locomotive while such locomotive was used in

switching cars, it was negligence on his part to drive such a team of horses in close proximity to the defendants' road, and if the horses became frightened by such locomotive, and ran away, and the plaintiff was injured thereby, there could be no recovery. It was shown by the plaintiff's testimony that the horses, about three weeks previous to this accident, at the same place, took fright at a locomotive and ran some distance before he stopped them. Further than this it was not shown that the horses were vicious, and had the habit of taking fright at a locomotive moving, and running away. It might be going too far to hold, on the facts appearing on the record, that, as a matter of law, the plaintiff was guilty of contributory negligence in driving his team upon the railroad crossing, though his recent experience must have taught him they were likely to be frightened at a locomotive which was switching cars. A prudent man would doubtless use greater care and be more watchful in driving such a team in close proximity to a railroad and in exposing himself to such danger. In Pennsylvania the court has held that " when a man drives an unbroken or vicious horse, or one that is easily frightened by a locomotive, along a public road running side by side with a railroad, and liable to be met or overtaken by a train, he does so at his own risk. It is an act," say the court, " amounting to recklessness." *Philadelphia, W. & B. R. Co. v. Stinger*, 78 Pa. St. 219–228. It is not necessary to go that length in this case, and we do not.

We think there must be a new trial for the failure to give the instructions which were first noticed, and we do not decide that it was error to refuse the last instruction.

*By the Court.*— The judgment of the circuit court is reversed, and a new trial ordered.