WALTERS, Respondent, vs. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

104 · 251
115  ¹206

*September 26 — October 20, 1899.*

*Railroads: Frightening horses at crossing: Contributory negligence of driver: Failure of flagman to give warning: Excessive speed: Proximate cause.*

1. In an action against a railway company for injuries received by being thrown from a wagon drawn by a runaway team alleged to have been frightened at a street crossing by reason of the negligence of defendant's flagman in failing to give warning of the approach of a train, it appeared conclusively that plaintiff failed to

look in the direction whence the train was coming until after the horses became frightened, and that, had he looked, he could have seen down the track in that direction more than 170 feet. *Held*, that the plaintiff was guilty of contributory negligence precluding a recovery.

2. Failure of the flagman at a street crossing to give warning of the approach of a train which stopped before reaching the street would not render the company liable for injuries received by a traveler as the result of his team becoming frightened at the train.

3. The running of a train at an unlawful rate of speed is not the proximate cause of injuries received by a traveler by reason of his horses taking fright at its approach.

APPEAL from a judgment of the circuit court for *Dunn* county: E. W. HELMS, Circuit Judge. *Reversed.*

For the appellant there was a brief signed by *H. H. Field*, counsel, and oral argument by *Mr. Field*. They argued, among other things, that the flagman had no reason to apprehend that the horses would be frightened by the noise incident to a proper operation of the engine as it approached the crossing. There was no danger of a collision to be apprehended, and he was not bound to anticipate that the ordinary noises made by the engine while at a distance from the crossing would scare horses of ordinary gentleness. The testimony fails to show negligence on the part of the flagman. *Flaherty v. Harrison*, 98 Wis. 559, 563; *Eastwood v. La Crosse City R. Co.* 94 Wis. 163; *Simkin v. L. & N. W. R. Co.* 21 Q. B. Div. 453, 35 Am. & Eng. R. Cas. 487; *Mitchell v. Turner*, 149 N. Y. 39; *Favor v. B. & L. R. Corp.* 114 Mass. 350; *Henderson v. Greenfield & T. F. St. R. Co.* 172 Mass. 542; *Howard v. Union F. R. R.* 156 Mass. 159.

For the respondent there was a brief by *F. M. White* and *W. F. McNally*, and oral argument by *Mr. White*. To the point that the absence of the flagman was an invitation to cross and an assurance of safety, they cited *Glushing v. Sharp*, 96 N. Y. 676; *Palmer v. N. Y. C. & H. R. R. Co.* 112 N. Y. 234; *Evans v. L. S. & M. S. R. Co.* 88 Mich. 442;

*Richmond v. C. & W. M. R. Co.* 87 Mich. 374; *Burns v. North Chicago R. M. Co.* 65 Wis. 312, 315; *White v. C. & N. W. R. Co.* 102 Wis. 489; *Rohde v. C. & N. W. R. Co.* 86 Wis. 309.

CASSODAY, C. J. This action was commenced March 28, 1898, to recover damages for personal injuries sustained by the plaintiff November 1, 1897, about 3 o'clock in the afternoon, by reason of his team becoming frightened and running away east on Second street in the city of Hastings, Minnesota, caused by the alleged negligence of the defendant in failing to give any notice or warning of the approach of the engine and cars, and in failing to have present at the time the customary flagman, and by running defendant's engine and cars faster than eight miles an hour, contrary to the ordinance of the city. Issue being joined and trial had, the jury returned a verdict in favor of the plaintiff, and assessed his damages at $5,000. From the judgment entered thereon for that amount of damages and costs the defendant brings this appeal.

It is undisputed that the Mississippi river, at Hastings, runs in an easterly direction along the north side of the city; that the defendant's main track runs north and south through the city on what was once Bailey street, but which has been vacated, and across the river; that Second street mentioned runs east and west across Bailey street, in which defendant's main track was so located; that Bailey street was ninety-nine feet wide; that the defendant's depot was on Bailey street, and extended a few feet east of the center of that street, and was on the west side of the defendant's main track, and about fifty feet south of the south line of Second street; that Second street was ninety-nine feet wide; that about 280 feet north of the north line of Second street was a switch from which started the track running southerly to Stillwater, and across Second street very nearly on

Walters vs. Chicago, Milwaukee & St. Paul R. Co.

the west line of Bailey street, and passing south on the west side of the depot; that, starting at a point at or near the river, in the northwesterly part of the city, was a track known as the levee track, running easterly and southerly in

The above plat taken from the map referred to in the opinion shows the relative situation of the tracks at the crossing. The levee track is the one spoken of by the witnesses as the switch track.— REP.

a curve, and reaching the main track a few feet north of the south line of Second street, and terminating with the main track in front of the depot; that the levee track crossed the Stillwater track about ninety-five feet from the center of Second street, measured by the line of the levee track.

The plaintiff's version of the accident is to the effect that about 3 o'clock in the morning of November 1, 1897, he and one Arnold, a teamster for Larson Bros., each started with a team and a load of lumber for that firm from Beldenville, Wisconsin, and to haul the same to Hastings; that they crossed the Mississippi, and drove west through Hastings along on Second street, and across the tracks in question, about 1 o'clock in the afternoon of that day, and saw the flagman at his shanty just east of the main track and a few feet south of the north line of Second street; that after unloading their lumber in the western part of the city, and feeding their teams, and getting their dinner, they started for home about 3 o'clock in the afternoon, traveling along east on Second street,— Arnold, with his team, being ahead; that, as they approached the railroad crossing, they saw wood and slabs piled six or eight feet high on the lot immediately north of Second street and west of the railroad tracks, and such piles terminated about fifteen feet west of the switch track; that the plaintiff had no box on his wagon and was sitting on the hind hounds of his wagon; that he held up his horses between a walk and a trot; that he looked ahead, to see if anything was in the way, and for the flagman, but saw nothing,— no flagman, no car, no engine; that after arriving at the crossing Arnold, who was about twenty feet ahead, motioned back for him to come on; that he was then on the Stillwater track, his horses being between that track and the switch track; that just then his horses saw the train, and started and jumped suddenly, and ran away; that he heard nothing until he looked around and saw the train coming down the levee track right at him, and then

first heard the noise of the engine puffing off steam pretty fast; that he saw the engine first, and the car next,— only one car, a box car; that the engine was ahead; that he had no control of his team after Arnold so beckoned to him; that when he crossed the main track the train was within two rods of him, and that he did not see the train before he got onto the main track, because he did not look for it, as he was hanging on to his team; that as he was going east he did not, at any time, look to the north to see whether any train, or car, or engine was approaching, but looked straight ahead at his team and for a flagman; that he had no control of his team, and was in no shape to get control of anything, as he was jumped off the hounds of his wagon onto the reach, and it kept him busy to stay on the wagon; that his team passed on the north of Arnold's, and ran, and turned a sharp corner, and struck a rock a block east of the crossing, and injured him badly. Plaintiff was recalled the next day, and testified to the effect that when he crossed the levee track the train was ten or twelve feet from him; that at the time Arnold beckoned for him to come on he was between the Stillwater track and the levee track, and his horses then started to run, and then he heard the engine, but had not seen it before.

The plaintiff's witness Arnold, who was driving just ahead of him, testified to the effect that the piles of slabs mentioned were piled on the north side of Second street, and about one and one-half rods from the center of the traveled track, and reached to within twelve or fifteen feet of the Stillwater track, and were from six to eight feet high; that he saw the train coming up when he was on the main track; that the engine was blowing off steam; that at that time the engine was six or eight rods from the crossing; that he then beckoned to the plaintiff to come on, and that his team then started up quick; that he did not remember whether the car or the engine was ahead; that he saw the flagman come

out of the shanty as he was crossing the main track; that he saw no occasion for the plaintiff's horses to run away, except that the train frightened them; that it was then six or eight rods away; that there was no trouble about seeing the engine and car; that there was no wind that day.

From the evidence on the part of the plaintiff thus summarized it conclusively appears that the plaintiff did not look north, nor in the direction of the coming car and engine, until his horses became frightened and were in the act of running away. True, in one part of his testimony he gives as a reason for not looking that the pile of slabs would have prevented him from seeing had he looked. But that could only be true before he had passed the east end of the slab pile. It is undisputed that the slab pile terminated fifteen feet west of the switch track, and was upon lower ground than the traveled portion of Second street. The map in evidence, made by the county surveyor of the county in which Hastings is situated, shows the streets and railway tracks in question, and was made upon a regular scale, and gives the distances. Its accuracy is conceded. From that map and the evidence in the record it conclusively appears that before the plaintiff reached the Stillwater track he could have seen down the levee track a distance of 170 feet from the center of Second street in that track; and that, as he moved east on that street, the distance he could see down that track gradually increased. By such failure to look the plaintiff was guilty of contributory negligence, and hence a verdict should have been directed in favor of the defendant. The reasons for such rule have been stated so frequently by this court as not to require repetition. *Schneider v. C., M. & St. P. R. Co.* 99 Wis. 385, 386, and cases there cited; *Cawley v. La Crosse City R. Co.* 101 Wis. 145.

But there is a still more serious objection to allowing this verdict to stand. It is undisputed that the injury to the plaintiff was the result of his team becoming frightened and

running away.  The team took fright, apparently, by reason
of the approaching car and engine.  The engine was faced
to the northwest, and was pushing a box car up the levee
track towards the depot.  There was only the one car and
the engine.  Just before or at the time the engine reached
the junction of the levee track and the Stillwater track it
stopped, as usual, in order that the switch connecting the
levee track with the main track in front of the depot should
be adjusted.  From the place where the engine so stopped
to the center of Second street on the levee track was ninety-
five feet.  In other words, the engine and box car stopped
before the box car reached the north line of Second street.
The only negligence of the defendant alleged or claimed
was the failure of the flagman to give to the plaintiff timely
notice and warning of the approach of the car and engine,
and that the speed of the car and engine was greater than
allowed by the city ordinance.  True, as indicated, the
plaintiff, after testifying that he did not see the train until
he got onto the main track, and then it was two rods from
him, was recalled the next day, and testified that when he
crossed the levee track, which was a few feet west of the
main track, the train was ten or twelve feet from him.
From this it might be inferred that the engine and car act-
ually crossed Second street at the time.  But the most char-
itable view to be taken of his testimony is that suggested
by reading it, and that is that he was so busy hanging on
to his team, and keeping himself on the hounds and reach
of his wagon, that ne gave little or no attention to the en-
gine and car.  The plaintiff's witness Arnold testified that
when he was on the main track the car and engine were six
or eight rods away, and that he heard it blowing off steam.
Several witnesses, including the three trainmen, swore pos-
itively that the engine and car stopped before reaching the
crossing; and the trainmen testify that when the teams were
crossing over the railroad tracks the engine and car were

near the stable designated on the map as 433 feet from the center of Second street, on the levee track. We think it is established by the undisputed evidence that the engine and car came to a dead stop, as usual, before reaching Second street. Certainly the evidence is insufficient to support a verdict that they did not stop. *Flaherty v. Harrison*, 98 Wis. 559.

These facts raise the question whether negligence of the defendant can be predicated on the failure of its flagman to stop the plaintiff and Arnold from crossing, or notify and warn them that a switch engine and car were coming on the levee track but were going to stop before crossing Second street. In other words, Is it incumbent upon railroads to notify travelers at street crossings whenever there is a switch engine operating in the vicinity? This court held ten years ago "that it was error to refuse to instruct the jury that there was no evidence of negligence in the operation of defendant's locomotive, which was engaged in switching cars near a street crossing, and that the same was not attended by unusual and unnecessary noises, when the plaintiff's team became frightened and ran away, causing the injuries complained of." *Abbot v. Kalbus*, 74 Wis. 504. As stated by Mr. Justice WINSLOW in a later case: "The right to operate a railroad includes the right to make the usual noises incident to the movement of its engines and trains, and it is matter of common knowledge that the exhausting of steam from the cylinder cocks is one of the noises very frequently accompanying the movement of engines." *Cahoon v. C. & N. W. R. Co.* 85 Wis. 572. Such rulings have been sanctioned in still later cases. *Bishop v. Belle City St. R. Co.* 92 Wis. 144, 145; *Flaherty v. Harrison*, 98 Wis. 559; *Dewey v. C.; M. & St. P. R. Co.* 99 Wis. 457, 458. A prominent text writer states the rule thus: "A railroad company is not liable for injuries resulting from horses becoming frightened upon a highway at the mere

sight of its trains or the noises necessarily incident to the running of trains and the operation of the road." 3 Elliott, R. R. § 1264, citing a large number of cases. What is said in *Ransom v. C., St. P., M. & O. R. Co.* 62 Wis. 178, inconsistent with the rules of law stated, must be regarded as overruled.

There is no reliable evidence that the engine was running faster than eight miles an hour; and, even if there had been, that was not the proximate cause of the injury. The proximate cause of the injury was, manifestly, the fright of the team. As a verdict should have been directed in favor of the defendant, it is unnecessary to determine whether it was error to refuse the instructions requested.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.