### Hugh House v. H. M. Cramer, Appellant.

**Automobiles:** RIGHT ON HIGHWAYS: CARE. Under the Statutes operators of automobiles have the same right to use the highways that drivers of horses or other vehicles possess, but they must exercise reasonable caution for the safety of others, and in determining the degree of care required the character of the machine, its speed, size, appearance, manner of movement, noise and the like may be taken into consideration.

**Same:** NEGLIGENT OPERATION. To allow explosions from an automobile engine while the machine is standing is not negligence unless the operator sees, or by the exercise of reasonable care might see, that horses are frightened thereby; then failure to use reasonable diligence to stop the explosions and thus avoid an accident becomes negligence. Under the evidence no case of negligence requiring submission of the issue to the jury was made.

*Appeal from Harrison District Court.*— Hon. W. R. Green, Judge.

Friday, May 17, 1907.

Action for damages occasioned by the frightening of plaintiff's team by the operation of defendant's automobile

resulted in a verdict and judgment against defendant, from which he appeals.— *Reversed.*

*J. S. Dewell,* for appellant.

*Burke & Tamisiea,* for appellee.

LADD, J.— At the intersection of Erie and Second streets, in Missouri Valley, is a blacksmith's shop facing south on Erie street and extending back on the east side of Second street sixty feet.   The sidewalk in front of the shop is twelve feet wide, and out farther is a small platform. The sidewalk along Second street is six feet wide, and about two feet farther out is a row of hitching posts connected with a chain.   In the afternoon of November, 9, 1904, the plaintiff's wife hitched his team, one to a post and the other to the chain, west of the shop and back from Erie street, a distance variously estimated by the witnesses at from thirty to sixty feet.   A short time thereafter the defendant came along Erie street from the east in his automobile with gasoline motor, at a speed of about six miles an hour.   He slacked up somewhat before reaching the shop, which was twenty feet wide, and came to a standstill with the front of his vehicle about two feet east of the east line of Second street, with defendant sitting therein eight feet further back, and two or three feet south of the platform.   This platform was two or three feet wide, so the automobile when it stopped must have been about eighteen or twenty feet south of the shop.   If the automobile stopped twenty feet out from the shop and two feet from the street line, the team could not have been hitched back from Erie street more than about thirty-five feet, for the evidence that the horses were then in the line of vision from the automobile seat was undisputed. The defendant may have disconnected the power from the running gear some twenty-five feet before stopping, but the evidence was in sharp conflict as to whether " the sparker or

ignitor was cut off " until after he had stopped. There was also a conflict in the evidence as to whether defendant might have seen the team from the place where he stopped. In short, the evidence was such that the jury might have found (1) that the defendant knew that teams were customarily hitched along Second street where Mrs. House had tied plaintiff's team; (2) that the explosion from defendant's automobile engine continued until it had stopped, and after the team had broken loose; (3) that defendant could have seen such team where tied from where he stopped; (4) that the damages were the proximate result of the negligence, if any, in stopping the machine at that place in the manner referred to. And the controlling question for decision is whether, under these circumstances, the defendant might have been found by the jury to have been negligent.

The right to make use of an automobile as a vehicle of travel along the highways of the State, is no longer an open question. Chapter 53, Acts 30th General Assembly. (Laws 1904). The owners thereof have the same rights in the roads and streets as the drivers of horses or those riding a bicycle or traveling by some other vehicle. But they are to use this means of locomotion with due regard for the rights of others having occasion to travel on the highways. The degree of care required necessarily depends somewhat on the character of the agency employed, and therefore the speed, size, appearance, manner of movement, noise, and the like may be taken into consideration in determining the degree of care to be exacted from the operator of an automobile. *Hannigan v. Wright* (Del.), 63 Atl. 234; *Wright v. Crane,* 142 Mich. 508 (106 N. W. 71); *Shinkle v. McCullough,* 116 Ky. 960 (77 S. W. 196, 105 Am. St. Rep. 249). As was observed in the case first cited, though comparatively new in use, there is nothing novel in the principles of law to be applied with respect to travel in them on the highways. All that is exacted is reasonable care and caution for the safety of

1. AUTOMOBILES: right in highways: care.

others.    The decisions thus far have proceeded on this principle, and will be found collected in the notes to *McIntyre v. Orner* (Ind.), 4 L. R. A. (N. S.) 1131; *Christy v. Elliott,* 216 Ill. 31 (76 N. E. 750, 108 Am. St. Rep. 196, 1 L. R. A. (N. S.) 215), 3 Am. & Eng. Cases, 487.    See *Hennessey v. Taylor,* 189 Mass. 583 (76 N. E. 224, 3 L. R. A. (N. S.) 345); *Raber v. Hinds,* 133 Iowa, 312.    The difficulty is in applying the principles to the facts owing to the novelty of the latter.

Of course, noises incident to the operation of the machine are not, of themselves, negligent.    Such is the holding with reference to the use of engines on railroads in cases cited by appellant.    *Abbot v. Kalbus,* 74 Wis. 504 (43 N. W. 367).    And by the same court this rule has been applied to motor cars.    *Eischman v. Buchheit,* 128 Wis. 385 (107 N. W. 325).    But noises may be emitted from a railway engine under such circumstances as to render the company liable as for negligence.    *Andrews v. Railway,* 77 Iowa, 669; *Toledo R. Co. v. Harmon,* 47 Ill. 299 (95 Am. Dec. 489); *Cobb v. Railway,* 37 S. C. 194 (15 S. E. 878); *Alsever v. Railway,* 115 Iowa, 338.    The same is true with respect to automobiles.    The noise attendant on the operation of the machine necessarily depends on its character, and somewhat on the power employed.    The defendant's vehicle was propelled by a gasoline engine, which, as the jury was instructed, " when in motion, is attended by explosive noises, and even when standing still, if the machinery is yet in motion, may make a whirring, grinding sound, and it is a matter of common knowledge that horses may be frightened thereby."    The operator is charged with notice of this fact, clearly recognized by the statute cited, and with the duty of so handling his own vehicle as not to unduly interfere with the use of the highway by others.    See *Wolf v. Des Moines Elevator Co.,* 126 Iowa, 659.    As said in *Indiana Springs Co. v. Brown,* 165 Ind. 465 (74 N. E. 616, 1 L. R. A. (N. S.) 238), in referring to those traveling by automo-

2. SAME: negligent operation.

biles and other modes: "Each is required to regulate his own use by the observance of ordinary care and caution to avoid receiving injury as well as inflicting injury upon the others, and in this the *quantum* of care required is to be estimated by the exigencies of the peculiar situation; that is, by the place, presence or absence of other vehicles and travelers, whether the horse driven is wild or gentle, whether the conveyance and power used are common or new to the road, the known tendency of any feature to frighten animals," etc. We have not discovered any case like that before us, but by applying these well-established principles to the facts as the jury might have found them, we apprehend little difficulty should be experienced in reaching a correct conclusion. The defendant did not see the horses before he stopped the car; but, as he knew teams customarily had been hitched along Second street west of the shop for twenty years past, he was charged with notice that horses might be tied there at the time.

If defendant was stopping but briefly, it was not negligence *per se* not to arrest the sparker., The evidence shows that he had come to the shop, as a neighborly act, to get certain repairs for Edgecome's automobile, and expected to stay but a moment. As he anticipated starting again shortly, he was not negligent in allowing the explosions to continue, unless he saw that these were frightening the team, or in the exercise of ordinary care ought to have noticed this, and by ordinary diligence might have stopped the explosions in time to have avoided the runaway. To determine this issue, it will be necessary to revert briefly to the evidence. From this it appears that the team broke loose at about the same time defendant stopped the automobile. The team did not come within his line of vision prior to that time. Some witnesses say the team escaped as the machine stopped, while others placed it immediately thereafter, but how long no one estimated, so that the record leaves it purely a matter of conjecture whether, by the exercise of ordinary dili-

gence and care, defendant might have noticed the condition of the team and interrupted the exhaust in time to have obviated their escape. Singular was on the corner opposite, and testified that: "Just about the time the team broke loose, the motor stopped. . . . I heard some one cry 'whoa' just before the team started. They jumped a little and broke loose. . . . I think he could see the team from where he was. The explosions from the automobile stopped just about the time the team broke loose. . . . I think young Mr. Edgecome was in the automobile also — at least they were all three in the machine when the team first began to pull back. The auto was just stopping at the time." Another witness testified that the first thing he noticed was defendant standing up in the machine, saying: "'There goes some one's team.' He did not make any effort to stop the noise of the machine. The noise was stopped after the runaway." Still another testified: "I do not think the machine was moving when the horses broke away. . . . When he came to a full stop, I saw the horses pull, and the north horse broke loose first. It was the first one to get scared." Gumb testified: "I saw the machine coming up. After it stopped I saw the horses jump and pull back. I noticed the horses began to pull back after the automobile stopped. I heard some one say, 'Look at the team jump up,' and I turned around and looked. I think the automobile had come to a stop before this." Matson testified: "I heard some one call 'whoa,' and at that time Mr. Cramer was in front of the blacksmith shop. He had stopped the machine, but the machine kept on moving." The defendant testified: "I was just getting up to get out of the machine, when I first heard the grinding of the buggy wheels as the team backed out. The first I noticed the horses the north one was much farther back than the south one and by that time they broke loose. The north horse may have broken before I noticed him, but they kept on pulling back. My machine did not move after I no-

ticed this team pulling, and they were gone before I could get out of the machine." A. Edgecome was in the blacksmith shop, and testified that at the time he came, " my son and another man were in the machine with him. He stopped in front or directly south of this platform spoken of. Soon after he stopped, I heard something scraping or rubbing on the back wheel as the team backed out. I looked out of the window on the west side of the building, saw the team had backed out, and were just heading north." Orlo Edgecome testified that he was in the machine; heard some one calling out that a team was getting away; that Mr. Cramer was still in the automobile. And, farther: " I could not see the team myself at the time. Afterwards, by looking forward, I could see the team around the corner. I saw Mr. Cramer rise and lean forward also."

If it be conceded that the automobile had come to a stop before the team pulled back and escaped, this must have happened immediately upon the stopping, and there is nothing in the record to justify the conclusion that had defendant, as soon as he saw or might have seen that the team was frightened, arrested the sparker, this would have been in time to have obviated their escape. There was no proof of how long would be required to silence the exhaust, or the time which elapsed after the fright of the team before it escaped; nor is there anything in the record from which it might be inferred that, had defendant acted promptly when the north horse backed, the explosions would have been interrupted before the other horse became frightened and both escaped. As said, the escape of the team seems to have followed immediately upon the stopping of the automobile, and as that was not negligent, a case was not made out for the jury.— *Reversed.*