JAY, Appellant, vs. NORTHERN PACIFIC RAILWAY COMPANY, Respondent.

*February 2—February 22, 1916.*

*Railroads: Injury to person crossing track: Contributory negligence: Failure to look: Warning signals at highway crossings: Omission to give: When injury "caused" thereby: Warnings due only to travelers on highways.*

1. Plaintiff, a licensee who had the right to cross defendant's railway tracks at a station and was accustomed to do so many times daily, and who while crossing the main track was struck and injured by a train, is *held* to have been guilty of contributory negligence, as a matter of law, upon undisputed evidence that after he knew the train was coming he went around the end of a string of cars on a sidetrack and proceeded to pass over the main track without looking toward the approaching train.

2. It appearing that plaintiff not only had ample warning but in fact knew that the train was coming—having seen the smoke and heard the noise,—it cannot be said that, within the meaning of sub. 6, sec. 1809, Stats. 1911, his injury "was *caused* by the omission" of defendant to give the warning signals provided for in sub. 4 of said section.

3. It further appearing that plaintiff was not traveling on or over a highway, but was merely crossing the railway tracks diagonally to the depot, at a point 400 feet from the highway, sub. 4, sec.

1809, Stats. 1911, is inapplicable. That statute was enacted for the protection of travelers on highways, and the duty to give the warning signals therein provided for is due only to such travelers.

APPEAL from a judgment of the circuit court for Bayfield county: G. N. RISJORD, Circuit Judge. *Affirmed.*

This is an action brought to recover damages for personal injury. In June, 1913, the plaintiff was engaged with a crew of men in loading cedar at Muskeg, a station on the defendant's line of road, not within the limits of an incorporated city or village, but having a depot and depot platform for the use of passengers and for receiving and delivering freight. The complaint sets forth that at the westerly end of the depot grounds and to the west of defendant's station there was a public highway crossing the defendant's tracks; that it was necessary for the plaintiff in prosecuting his work to be upon and cross and recross the tracks at said station many times daily; that on June 18, 1913, plaintiff, while crossing defendant's track at a point about 400 feet easterly from the public highway crossing, was struck by one of defendant's locomotives which was then and there traveling west hauling a freight train; that at the time of striking plaintiff the locomotive was being negligently and carelessly run at a dangerous and excessive rate of speed, to wit, about forty miles an hour; that defendant's engine crew in charge of said locomotive at said time negligently and carelessly failed and omitted to blow the whistle on said locomotive when the same was eighty rods distant from said highway crossing, and grossly and negligently failed and omitted to blow the whistle of the locomotive at any time before striking the plaintiff, and negligently and carelessly failed and omitted to ring the locomotive bell continuously from the time the locomotive was eighty rods from the public highway crossing until such crossing was reached or to ring the bell at all before striking the plaintiff, and that said employees like-

wise failed to otherwise give any warning or notice to the plaintiff of the approach of the train by which he was struck.

The complaint further alleges that the defendant's sidetrack is located on the depot grounds to the south of its main track and parallel therewith and that the passenger platform is north of said track; that at the time of being struck plaintiff was crossing over the sidetrack to the main track, and that he was unable to see the approaching locomotive until he was upon the main track because there were box cars upon the sidetrack which obscured his vision in the direction from which the train approached, and that when plaintiff stepped out from the end of the box cars upon the main track it was too late to avoid the train because of the great rate of speed at which it was being run, and that plaintiff at all times used due care for his personal safety. The material allegations of the complaint were put in issue by the answer. At the close of the trial the court directed a verdict for the defendant, and from the judgment entered on such directed verdict dismissing the complaint the plaintiff appeals.

For the appellant the cause was submitted on the brief of *C. F. Morris.*

For the respondent there was a brief by *Hanitch & Hartley,* attorneys, and *C. W. Bunn,* of counsel, and oral argument by *C. J. Hartley.*

Barnes, J.    The plaintiff was clearly a licensee who had the right to cross over the tracks of the defendant while doing his work.    The trial court held that he was guilty of contributory negligence as a matter of law.    The appellant argues that a jury question was presented by the evidence on the issue of such negligence, and that, whether there was or not, the court erred in directing a verdict, because contributory negligence was no defense to the action.

It is entirely clear under our decisions that the court was right in holding that on the undisputed testimony there was

no jury question on contributory negligence. The accident occurred shortly after noon. The plaintiff knew that the train was due about that time. He saw the smoke and heard the noise of the train when it was a mile away. He directed one of his employees to flag it. He warned a farmer who was unloading cedar near the sidetrack that the train was coming and to look out for his horses. The train was then about a quarter of a mile away. When he first heard it and saw the smoke he says his view was obstructed by some cars that were on the sidetrack. He went around the end of this string of cars and proceeded to pass over the main track without looking toward the approaching train. He had the opportunity to do so before entering upon the danger zone, but took no advantage of it, and entirely fails to give any satisfactory reason or excuse for neglecting his plain legal duty. The facts show as clear a case of contributory negligence as often comes before this court, and it has been repeatedly held that under such facts it is the duty of the court to take this issue from the jury. The latest case on this point is *Meissner v. Southern Wis. R. Co.* 160 Wis. 507, 152 N. W. 291. In the opinion in this case will be found a partial list of the prior cases on the same point.

Appellant's second contention rests on sub. 4 and 6 of sec. 1809, Stats. 1911. The material parts of these two subsections read as follows:

Sub. 4. "No such railroad company or corporation shall run any train or locomotive over any public traveled grade highway crossing, outside of the limits of any incorporated city or village, unless the whistle shall be blown eighty rods from such crossing and the engine bell rung continuously from thence until such crossing be reached by such train or locomotive."

Sub. 6. "In any action brought by any person or his legal representative against a railroad company or corporation operating a railroad in this state, to recover for personal injuries or death, if it appears that the injury or death in ques-

tion was caused by the omission of a railroad company or any such corporation to comply with any of the requirements of section 1809, the fact that the person injured or killed was guilty of any want of ordinary care contributing to the injury or death, shall not bar a recovery of the damages caused by any such omission of a railroad company or any such corporation, and no want of care upon the part of the person injured or killed under such circumstances, less than gross negligence, shall bar such recovery."

So much of this latter subsection as provides that a slight want of ordinary care shall not prevent recovery was added by ch. 653, Laws 1911, the law being entitled: "An act to amend subsection 6 of section 1809 of the statutes, relating to injuries at railroad crossings." This subsection was twice amended in 1915, but these amendments have no application to this case and would not affect it if they had.

Before plaintiff can recover under this statute it must appear that it is applicable to the situation disclosed by the evidence, and further, that the injury "was *caused* by the omission" of the railroad company to give the required signals.

The plaintiff's case would seem to be fatally weak in both respects. The purpose of the statute is to give timely warning of the approach of a train to those who are entitled to it so that they may avoid injury. The plaintiff not only had ample warning that the train was coming but he knew as a matter of fact that it was. This was apparent because of the smoke which plaintiff saw when he was behind the freight cars, and it was likewise apparent from the noise of the train which he admits he heard when it was still a mile away. He knew the direction from which the train was coming, and there was no other train in the vicinity to distract his attention. How it can be said in this case that the failure to give the warning signals provided for "caused" the injury here, is difficult to see, when the noise made by the approaching train was at least as well calculated to warn the plaintiff of his danger as the signals provided for would be. A finding

of causal connection would rest on speculation under the evidence in this case.   No stronger case is made here on the evidence than was made in *Smith v. C. & N. W. R. Co.* 161 Wis. 560, 154 N. W. 623, where it was held as a matter of law that the plaintiff's injury did not result *"in whole or in part, directly or indirectly"* (sub. 2, sec. 1809v, Stats.), from the failure to use a statutory headlight.

It is also reasonably clear that sub. 4 of sec. 1809 does not apply to this case.   The plaintiff was not traveling on or over a highway and was not intending to do so.   He did not approach nearer than 400 feet to the highway and was simply proceeding diagonally across the tracks on his way to the depot.

It is true that sec. 1809 is a safety statute and as such should be liberally construed in the interest of the traveling public.   It is also true that the 1911 amendment is somewhat drastic.   But in the final analysis of the statute the question is, What did the legislature intend?   That intention should neither be extended nor restricted by endeavoring to bring cases within it that do not belong there nor by excluding cases that do.   It has never been held by this court that sec. 1809, as it existed prior to the amendment of 1911, applied to persons who were not on a highway.   While the defense of contributory negligence was taken away by that amendment, it does not in the slightest degree affect the question of the negligence of a railroad.   In *Ransom v. C., St. P., M. & O. R. Co.* 62 Wis. 178, 22 N. W. 147, it was held that the statute was intended for the protection of travelers over a highway at or near a crossing, and that it did not exclude from protection travelers on the highway who did not intend to use the crossing.   62 Wis. 182.   In this case the plaintiff's wife was traveling over a highway which ran parallel to and near by a railroad in close proximity to a crossing and her horse took fright and ran away and injured her.   It did not appear that she intended to cross over the railroad.   In *Walters v. C., M.*

*& St. P. R. Co.* 104 Wis. 251, 80 N. W. 451, the court held that where an engine was approaching a highway crossing, but was brought to a stop before the crossing was reached, there was no duty on the part of the railway company to give the statutory signals for the crossing. In so far as the *Ransom Case* conflicted with what was decided in the *Walters Case* it was expressly overruled. This case could hardly have been decided on any other theory than that the statutory signals were intended to be given for the protection of travelers on highways. These two cases were reviewed in *Kujawa v. C., M. & St. P. R. Co.* 135 Wis. 562, 116 N. W. 249. The decision in the *Walters Case* was not disapproved, but it was held not to apply to the facts in the case then before the court. It was further held that it would be too narrow a construction to say that no one could invoke the benefit of sec. 1809, Stats., except where an actual collision occurred on the crossing. The court then proceeds to state the purpose of the statute as follows:

"The statutory requirement that the engine bell be rung before reaching and while passing over the crossing is designed, not merely to prevent travelers who are about to use the crossing from running into the train, but also to enable them to know of the approach of the train at a sufficient distance to guard their horses against taking fright."

It is pretty clear that when all three of those cases were decided the judicial thought was that the statute in question was one passed for the benefit of travelers on highways and that it went no farther. Such would seem to be its obvious purpose. It only applies to the part of a line of railroad that lies outside of incorporated cities or villages. It has no application except where the crossing is at grade, and the requirements extend to only the eighty rods of road nearest the crossing as the train approaches. If it were intended to apply to the farmer working with his team in his field adjacent to the track, or to the licensee walking upon the track,

there would be no object in limiting the requirements to eighty rods, because an injury which might result from the running of a train in the cases mentioned or in kindred cases would be much more liable to happen at points distant from highway crossings than within the particular quarter of a mile specified. So, too, if the statute was designed to protect persons other than travelers on highways, no good reason is apparent why the signals provided for need not be given, where the crossing was above or below grade.

The case of *Schug v. C., M. & St. P. R. Co.* 102 Wis. 515, 78 N. W. 1090, relied on by the appellant, is not in point. The statute there involved was not confined by its terms to injuries at crossings, but was one that extended to licensees who might be passing over the tracks of a railway company at any point within a city. Provisions substantially similar to that found in what is now sub. 4 of sec. 1809 have been before the courts of many states, and it has almost invariably been held that such statutes were intended as warnings to travelers who were using the highways. The general rule deduced from the authorities as stated in Cyc. is as follows:

"In the absence of a provision in the statute specifically designating persons to whom the duty of giving crossing signals or warnings is due, it is generally held that such warnings are due only to persons on the highway using, about to use, or who have just used the crossing, and not to trespassers or licensees on the railroad tracks or right of way at places other than a crossing, nor to persons riding or driving along parallel to the railroad." 33 Cyc. 784 and numerous cases cited.

The last clause of the quotation is contrary to what has been decided by this court, but the remaining portion of the quotation is in substantial accord with the cases cited. Such in substance is the rule laid down in 3 Elliott, Railroads (2d ed.) § 1158, and cases cited in note 90, p. 333; *Harty v. Cent. R. Co.* 42 N. Y. 468, 471; *Randall v. B. & O. R. Co.* 109 U. S. 478, 3 Sup. Ct. 322; *Lepard v. Mich. Cent. R. Co.*

166 Mich. 373, 130 N. W. 668, 40 L. R. A. N. s. 1105; *Missouri, K. & T. R. Co. v. Saunders,* 101 Tex. 255, 106 S. W. 321, 14 L. R. A. N. s. 998 and cases cited in note; *Toomey v. So. Pac. R. Co.* 86 Cal. 374, 24 Pac. 1074; *Williams v. C. & A. R. Co.* 135 Ill. 491, 26 N. E. 661; *Hutto v. Southern R. Co.* (S. C.) 84 S. E. 719.

The plaintiff cannot recover for failure to give the statutory signals unless he was one of the class for whose benefit the statute was passed. See note to *Wolf v. Smith* (149 Ala. 457, 42 South. 824) 9 L. R. A. N. s. 343, and *Denton v. M., K. & T. R. Co.* (90 Kan. 51, 133 Pac. 558) 47 L. R. A. N. s. 820. It follows from what has been said that the lower court was right in directing a verdict.

*By the Court.*—Judgment affirmed.