### SAN PEDRO, L. A. & S. L. R. CO. v. MATHEWS.

(Circuit Court of Appeals, Eighth Circuit. June 20, 1919.)

No. 5094.

RAILROADS ⊙~314—ACCIDENTS AT CROSSINGS—NEGLIGENCE.

> That a railroad company permitted two engines under full steam pressure to stand on a track in its yards near a highway for a short time while awaiting the passage of another train before taking out a freight train, and that while so standing some noise, though not more than usual, was made by steam escaping through the automatic pop valves, *held* not to constitute negligence which rendered it liable for injury to plaintiff, who after passing the engines on the highway drove his team upon the main track crossing 37 feet distant, and was struck by a passing train, which was in view for a quarter of a mile.

In Error to the District Court of the United States for the District of Utah; Tillman D. Johnson, Judge.

Action at law by Charles Mathews, Jr., against the San Pedro, Los Angeles & Salt Lake Railroad Company. Judgment for plaintiff, and defendant brings error. Reversed.

Dana T. Smith, of Los Angeles, Cal. (F. R. McNamee, of Los Angeles, Cal., on the brief), for plaintiff in error.

Ray Van Cott, of Salt Lake City, Utah (J. H. Moyle and H. D. Moyle, both of Salt Lake City, Utah, on the brief), for defendant in error.

Before CARLAND and STONE, Circuit Judges, and ELLIOTT, District Judge.

ELLIOTT, District Judge. This is an action by Charles Mathews, Jr., defendant in error, against the railway company, plaintiff in error, to recover damages for personal injuries sustained by the former in an accident at a street crossing over the tracks constituting the railway yards of the plaintiff in error, in the town of Caliente, Lincoln county, Nev., wherein he was struck by one of the railway company's passenger trains.

The defendant in error, Mathews, for convenience will be referred to as the plaintiff, and the plaintiff in error, the railway company, as the defendant.

Following the formal allegations of the complaint, there are a number of allegations intended to assert the negligence of the defendant, the injury of the plaintiff, and the damage sustained, and the liability of the railroad company. The defendant answered with a denial and a plea of contributory negligence.

Upon the trial of the case, however, all of the issues were limited by the trial court, in the following language:

"There are a number of grounds of negligence alleged in the complaint, gentlemen of the jury, but under the evidence offered in the case I consider it my duty to take from your consideration all of the alleged grounds of negligence save and except such as I shall now read to you from the complaint.

"The complaint alleges 'that said defendant then and there negligently and carelessly caused and permitted two of its large locomotives with their respective tenders to be and remain upon one of said yard tracks immediately north of said main line of railroad in close proximity to each other, and within approximately 12 feet of the traveled portion of said public highway; that said defendant then and there negligently and carelessly caused and permitted said locomotives to be and remain under heavy steam, and to emit and discharge the same from their safety or exhaust valves with great noise, to such an extent that all sounds of the approaching train hereinafter referred to were entirely drowned and cut off from the hearing of the plaintiff.

" 'That at said time and place and while the plaintiff was in the act of driving his team of horses and wagon which he was then driving from north to south over and across the intersection of said highway, and when his team had reached a point on said highway opposite the said locomotives upon said yard track as aforesaid, plaintiff's team of horses became frightened on account of the loud noise carelessly and negligently made by the discharge and emission of said steam from said locomotives and ran forward along said public highway, and plaintiff thereupon used his best efforts and skill to bring them under control, which he did, but by the time he had thus controlled them they were upon defendant's main line of railroad; that he thereupon for the first time saw defendant's through passenger train, and the said locomotive and train of cars attached thereto, running as aforesaid, ran into the wagon of said plaintiff while he was in the act of crossing defendant's said main line of railroad at said intersection.' "

There was a verdict in favor of the plaintiff upon the issues thus submitted to the jury.

The first question presented by the record is whether the jury should have been directed by the trial court to return a verdict in favor of the defendant upon all of the issues, upon defendant's motion at the close of all of the evidence, for the reason that "there is no evidence sufficient to entitle plaintiff to go to the jury," and "there is no showing of any negligence whatever on the part of the defendant company."

An examination of the record discloses the following state of facts, upon which there is absolutely no dispute: That Caliente is a small town situated upon the railway of the defendant in the county and state above named; the main line track of defendant running generally in an easterly and westerly direction, and Spring street in

said town of Caliente running generally in a northerly and southerly direction; that the approach of said street in the vicinity of the intersection with the tracks of the defendant is on an acute angle, gradually curving to the left from the north, until it intersects the main line track at a right angle; that at this point the railway company maintains yards and extensive trackage facilities, a roundhouse, water tank, and other buildings, maintaining seven tracks, all running in an easterly and westerly direction at the point where the said street crosses and intersects said railway; on the day in question there were two locomotives with tenders on one of these tracks, both of which were headed east and away from the street, the rear of the tender of the rear locomotive being within 10 to 20 feet east of the traveled portion of the street; that these two engines were standing on this outgoing track in readiness to and did take a heavy freight train, with the assistance of a third engine, out upon the main track and up a heavy grade to the east, immediately upon the arrival of the passenger train over the main track from the east; that as plaintiff approached the crossing from the north, driving in a southerly direction along said Spring street, and before driving upon any of the tracks, he observed the two engines standing on the outgoing track, which track is the third one north of the main track; that at the time of his approach toward the standing engines one or both of said engines were exhausting steam through the safety or exhaust valve with such noise that it prevented the plaintiff hearing the approach of the train on the main track; that on what was known as the "caboose track," in an easterly direction from the standing engines, were some cabooses, and these cabooses, the two standing engines, and steam therefrom, and some fences constituted an obstruction to the view of the main track of the defendant company to the east of said Spring street crossing of a person approaching said crossing from the north along said Spring street. The plaintiff testified that as he approached the crossing, driving in a southerly direction along said Spring street, he observed the engines standing on the outgoing track, and that there was much steam being emitted from the engines, that the steam covered up and enveloped the engines, especially toward the highway. He testified that the engines were making a noise, the steam popping off when he came in sight of them, and it continued and was so loud that it was difficult to hear as he approached the point in the street directly west of the engines. It appears from other uncontradicted testimony that at the time of his approach and passing of the engines the two engineers were not in their cabs, one being on the ground beside, fixing a rod, and the other close to his engine, and that neither saw the plaintiff on the highway until he had passed the rear of the engine nearest the highway. It further appears that the south rail of the outgoing track on which said engines were standing was 37 feet from the north rail of the main track.

It is undisputed that the plaintiff was an expert horseman; that he had for many years known the crossing in question; was well acquainted with it; knew that trains might be expected to pass at

any time upon the main track; and he also knew a train was due on the main track from the east at about the time he approached the crossing. His sight and hearing were not impaired; he was not excited, and knew as he drove up toward the two engines standing east of the highway that his view toward the east was obstructed, and he therefore could not see a train approaching from that direction on the main track. He did not stop before passing the rear of the engines and as he came up to the main track. He says he looked before he came to the engines standing east of the highway, but because of the obstructions above referred to he could not see; and he listened, but because of the noise from the engines he could not hear.

It is admitted that he came up to these engines with a gentle team, with a covered spring wagon with the side curtain up and with his reins hanging loosely. Plaintiff claims that the nigh horse shied a little, and that he thereupon pulled up the lines. It does not appear that the horse shied more than 2 or 3 feet, nor that there was any attempt on the part of the team or either of them to run away, nor is it shown that the team was at any time out of the control of the plaintiff.

The record discloses that when he had reached this point he was 37 feet away from the main track, upon which he knew a train might approach at any time, and over which he knew a train was due to approach from the east at about that time, and there was an unobstructed view up the said main track toward the east for nearly a quarter of a mile. Notwithstanding this, he neither looked nor listened and paid no attention to the approaching train, although he was called to by at least two persons and his situation was seen by at least two other witnesses, all realizing the danger of his position except himself. Disregarding the opportunity to look and see, and disregarding the necessity for looking before going upon the track, without thought or care for his own safety, he went forward until his horses' heads were just approaching the track, when he saw the train, and then, instead of stopping the team, struck them in an effort to cross the track ahead of the on-coming train.

He testified that when the horses shied he straightened them up, and their heads were right on the track. He does not pretend that he made any effort to stop them, although he then saw the on-coming train. Instead of stopping them, he slapped the horses with the lines in an effort to cross ahead of the train, and the engine of the train struck the wheel of his wagon. The engineer, having used every reasonable means to stop the train when he saw the plaintiff, succeeded to the extent that only the engine and a portion of one car passed over the highway crossing.

The physical conditions show that the plaintiff could have seen the train coming, if he had looked, after reaching a point in the highway west of the two engines.

The record discloses that these two engines had just been taken by their engineers from the roundhouse east of this highway, brought down to the water tank, also located east of the highway, had taken

water, and then had been brought down to the positions they occupied at the time of the accident, preparatory to taking a heavy freight train to the east over the main track, which was traversed by the passenger train from the east which caused the accident.

This freight train was being made up by the switch engines in the yards west of the two engines and west of said highway. The engineers had brought their engines to this position, and were waiting for the brakeman to come to the switch west of the highway and signal them that the freight train was ready for them and for them to proceed west to said train. It is undisputed that this freight train was ready to start and should leave, under the orders, immediately upon the arrival of the passenger from the east; that it was the usual and regular custom to steam up the engines, getting them under full steam just prior to taking out the train; that the engines in their operations were supposed to be under pressure required to pull the train, and that the defendant's engineers of these two engines upon that day, following their usual custom, backed down near this intersection, and stood there ready for the brakeman to come to the switch and signal them; that in the usual operation of the yards it was a necessary custom for them to take water, and then to back away from the track adjacent to the tank, to the end that other engines might be supplied without delay.

Taking the testimony of the plaintiff, it appears that there was no one on the engines causing the noise; that whatever steam there was escaping from the engines was by reason of the operation of the safety or exhaust valves. Such safety valve was not operated or even set by the engineer, but by a mechanic at the roundhouse, and set by him for the purpose of safety and to prevent accidents. Taking the most liberal view of the plaintiff's evidence, there was no sudden popping off of the engines at the time the team was even with or near the engines. There is no evidence in the record from which it can reasonably be inferred that there was any change in the conditions with reference to either the noise or steam from the engines at the time the plaintiff approached the point in the highway directly opposite the engines. On the other hand, it conclusively appears that the only noise there was the noise of the pop valves and the consequent escaping steam, and that that condition obtained continuously and was observed by the plaintiff himself at a point far distant to the north of the engines.

It appears that a poppet valve is a necessary appliance; that it is a late, safety, mechanical device, and that its automatic operation is not unusual, and that such operation especially obtains at a time when the engine is being prepared for hauling a heavy load; and, further, there was nothing unusual either in the fact that the valves operated at that time and place or in the consequent noise of the escaping steam.

Defendant contends that under these undisputed facts it was not responsible for the alleged injury of the plaintiff, and that there is an entire absence of evidence of negligence on the part of the defendant.

A party charging negligence must prove it. He must show that the defendant by his act or by his omission has violated some duty incumbent upon him, which has caused the injury complained of. If there is no evidence upon which a rational conclusion might be based in support of the claim of the plaintiff, the case should have been withdrawn from the jury. Juries cannot be allowed, however great the deference conceded to their province, to make mere conjecture or speculation the foundation of their verdicts. Parrott v. Wells, 15 Wall. 525, 21 L. Ed. 206.

This issue involves a determination of the elements that necessarily enter into the act or the omission that is alleged constitutes the failure to perform a duty incumbent upon the defendant, and which caused the injury complained of.

The allegation on the part of the plaintiff of the negligence of the defendant company is that "two of its large locomotives were carelessly caused and permitted to be and remain upon one of its said yard tracks immediately north of said main line of railroad in close proximity to each other, and within approximately 12 feet of the traveled portion of said public highway; that said defendant then and there negligently and carelessly caused and permitted said locomotives to be and remain under heavy steam, and to emit and discharge the same from their safety or exhaust valves with great noise, to such an extent that all sounds of the approaching train hereinafter referred to were entirely drowned and cut off from the hearing of the plaintiff."

It is further alleged that—

"At said time and place, and while the plaintiff was in the act of driving his team of horses and wagon with which he was then driving from north to south over and across the intersection of said highway, and when his team had reached a point in said highway opposite the said locomotives upon said yard track, as aforesaid, plaintiff's team of horses became frightened on account of the loud noise carelessly and negligently made by the discharge and emission of said steam from said locomotives, and ran forward along said public highway. * * *"

Did the record, when the defendant made its motion, justify the court in submitting to the jury the question of this negligence and carelessness alleged in the complaint? To determine this, a consideration of the rights and duties of the defendant in the operation of its trains and railroad yards, and especially with reference to its duty toward travelers who might cross the tracks of the defendant at said public highway, is necessary, because, unless there was a violation of a duty, there was no negligence.

The defendant's right to operate its railroad and to construct, maintain, and operate its railroad yards at the point in question included the right to make the usual noises incident to the operation and movement of its engines and trains, and it is a matter of common knowledge that the exhausting of steam from the safety valves is one of the noises very frequently accompanying the ordinary operation of engines.

The railroad company had the right to use its yards and tracks, and the public had the right to use the crossing over such tracks,

and each with due regard for the rights of the other. The right to use its tracks and the public right to use the crossing impose upon the railroad company the duty of operating its engines and trains in the usual manner and in a reasonable way, and to prevent unusual or unnecessary noises to be made by the engines; and whether or not a railroad company is responsible for an accident, frightening horses upon a crossing, is entirely dependent upon whether or not there was a sudden or unusual or unnecessary noise, of which plaintiff complains.

Under the undisputed facts in this case, the defendant was using its yards in the usual, ordinary way for the transaction of the usual business of the company. There had been no undue delay between the time the engines were brought down to the east side of this highway crossing for the purpose of pulling out the freight train and the time of the accident. This freight train, under the orders, was to leave at 12:40 or 1 o'clock, immediately upon the arrival of the train from the east, and immediately after the accident, pursuant to a signal of the brakeman at the switch on the west side of the highway, these engines were taken to the west side of the crossing, one coupled to the front of the freight train, the other with its tender placed in the center of the train, and a third engine coupled to the back of the freight train, and, thus equipped, the freight train proceeded on its way east over the main track that had just been traversed by the passenger train, which was proceeding west at the time of the accident.

The evidence clearly shows that the noise complained of by the plaintiff was the escaping of the steam through the safety valves. It is admitted that neither of the engineers were in the cabs, one being beside his engine adjusting a rod and the other on the ground close to his engine, and that neither saw the plaintiff until he had passed the rear of the engine nearest the highway. There is an entire absence of testimony of any negligence or any carelessness on the part of the defendant in the operation of its engines or in the fact that the engines were brought down just east of the crossing, but a few minutes prior to the accident, there to await the signal of the brakeman at the switch west of the crossing, when the freight train was made up and ready for them to take out; it appearing that there was no unusual noise, and that the noise was the ordinary operation of the safety valve, a necessary and proper function in the operation of engines to be immediately used in the hauling of the heavy freight train up the grade on the main track to the east.

To entitle the plaintiff to recover upon his allegation, it must be shown that the quantity of steam escaping from the engine and the noise made thereby was unusual and unnecessary. There is no suggestion of either, nor is there any testimony from which such an inference can reasonably be drawn.

The proper inquiry is not whether the accident might have been avoided if the company had anticipated its occurrence in the manner in which it happened, but whether, under the circumstances revealed by the undisputed testimony, there was any want of reason-

able care and diligence on the part of the company in the management of its engines and to guard against danger.

The act of negligence on the part of the company which was alleged and attempted to be established was that "its servants negligently and carelessly caused and permitted two of its large locomotives with their respective tenders to be and remain upon one of said yard tracks in close proximity to each other and within approximately 12 feet of the traveled portion of the said public highway, and to be and remain under heavy steam and to emit and discharge the same from their safety or exhaust valves with great noise, * * *" and that the team became frightened on account of the loud noise carelessly and negligently made. If this is to be taken as an allegation of the engines occupying a place near the highway an unreasonable length of time, clearly the allegation is not sustained by the evidence, as there is no controversy as to the manner in which the engines were operated, the purpose for which they were taken to that position, or that they were moved to that position immediately before the accident. Neither is the controversy as to the fact that there was no unusual noise or quantity of steam, and that it was simply the continuous action of the automatic safety valve, which has been devised and is approved by its general use for the safety of locomotives and the protection of life.

Steam escaping in such legitimate use is a necessary incident to such authorized business of operating steam engines, for which there is no liability. The law in conferring the right to use an element of danger does not accompany the right with a penalty. The right is conferred with but one limitation, that in the exercise thereof it be not abused. It is unnecessary to determine whether upon issues differently framed, under different circumstances, there might not be a recovery for the abuse of the right of the railroad company to permit the escape of steam from an automatic safety valve. Under the undisputed facts in this case, however, considering the operation of the engines, the purpose for which they were brought down, the time they were there, the necessity for the heavy head of steam in the engines to pull the load up the grade—all the undisputed circumstances considered—in our opinion but the one conclusion is justified. In the operation of the engines the defendant's servants had the privilege and duty to keep the steam at such a gauge as would enable them to pursue their course without delay. A rule that would require an engineer to draw his fires when stopping for a reasonable time at a highway or street crossing would so embarrass the operation of railways as to destroy, in a great measure, effective systems of travel and transportation. Nor is this a case of an engineer within a city where teams are constantly passing, needlessly and unnecessarily opening the valves or throttle on his engine and frightening horses and causing them to run away and commit injury. Nor is it a case of the engineer in his cab near a crossing, seeing the approach of a traveler, suddenly opening the throttle or causing the escape of steam just as the team approaches the point nearest the engine. The railroad company, in the legitimate trans-

action of its business has a right to use steam, and it is not liable for the proper and necessary use of the same, even if it result in the injury of others, as by frightening horses. Negligence cannot be predicated under ordinary circumstances or because there was a proper pop valve and because it did perform its proper office by permitting steam to escape in order to prevent a dangerous pressure. Omaha & R. V. Ry. Co. v. Clarke, 39 Neb. 65, 57 N. W. 545. And there was no evidence in this case upon which a finding could be predicated that this engine had been permitted to stand a long time at the crossing with the steam kept unnecessarily at a high pressure.

We are of the opinion that nothing unusual occurred in the operation of these engines at the time of the accident. The escape of the steam and the consequent noise was nothing out of the ordinary. Defendant had a right to operate its engines in the manner shown, without responsibility on its part for the consequences of any of the ordinary noises which the operation of the engines causes, or such circumstances as the ordinary escape of steam or smoke. If such were not the case, railway companies would be greatly embarrassed in the performance of the duties they owe to the public. There appears to have been an utter failure to show any excessive or unreasonable blowing off of steam or any unusual noise or anything not ordinarily attendant upon the usual operation of a locomotive. Dewey v. C., M. & St. P. Ry. Co., 99 Wis. 455, 75 N. W. 74; Walters v. C., M. & St. P. Ry. Co., 104 Wis. 251, 80 N. W. 451.

It is suggested that this defendant should not have approached the highway with its engines, but should have remained back in its yards so that the noises incident to their operation, such as the escape of steam, would not frighten horses of those who might desire to use the public highway. This contention of the plaintiff would deprive the railway of the use of its yards, and the practical management of its business of collecting cars, assembling trains, and removing them from the yards to the main tracks. We do not think that the railroad company should be required to remove its engines further from the crossing than is reasonably necessary to permit the free use of the highway by the public for travel, and there is no contention here, and nothing in the record to support it if made, that the highway itself was obstructed. Any other conclusion would involve the determination of how far it is necessary for the defendant to remove its engines or cars from the crossing, and the question whether that duty had been performed by the company in each given case would be dependent upon the "conjecture" or "speculation" of the particular jury to which the question might be submitted, and place it practically within the prohibition of the language of the opinion of the Supreme Court of the United States in the case of Parrott v. Wells, supra.

There was an entire failure on the part of the plaintiff to show negligence upon which his right to recover was predicated. The alleged injuries of plaintiff, upon the undisputed record, from the frightening of his horses, were concededly from the usual noises

incident to the ordinary operation of the engines of the defendant, and there is no liability on the part of the railway company therefor.

The determination of defendant's exception to the court's failure to direct a verdict for the defendant upon its motion at the close of all of the evidence renders it unnecessary to determine the question of contributory negligence on the part of the plaintiff.

The court erred in denying the defendant's motion for a directed verdict at the close of the evidence. The judgment below is reversed, and a new trial ordered.